**GREATBATCH LTD., Plaintiff,**

v.

**AVX CORPORATION and AVX Filters Corporation, Defendants.**

C.A. No. 13–723–LPS

United States District Court, D. Delaware.

Filed April 18, 2016

Public Redacted Version Issued April 22, 2016

Brian E. Farnan, Farnan LLP, Wilmington, DE, James R. Muldoon, Pro Hac Vice, Laura W. Smalley, Pro Hac Vice, Neal Slifkin, Pro Hac Vice, Steven P. Nonkes, Pro Hac Vice, for Plaintiff.

Alison C. Casey, Pro Hac Vice, Heather B. Repicky, Pro Hac Vice, James C. Hall, Pro Hac Vice, Ronald E. Cahill, Pro Hac Vice, Paul J. Cronin, Pro Hac Vice, Todd Anthony Coomes, Arun John Mohan, Chad Michael Shandler, Jason James Rawnsley, Robert W. Whetzel, Todd Anthony Coomes, Richards, Layton & Finger, PA, Wilmington, DE, for Defendants.

### MEMORANDUM ORDER

HON. LEONARD P. STARK, UNITED STATES DISTRICT JUDGE

At Wilmington this 18th day of April, 2016, having reviewed the parties' briefing (D.I.645, 659, 666), letters (D.I.649, 650, 661, 662, 663, 665, 668), and related filings regarding (1) Defendants AVX Corporation and AVX Filters Corporation's ("Defendants" or "AVX") Renewed Motion for Reconsideration (D.I.644) ("Renewed Motion"), and (2) Defendants' request for additional discovery related to Plaintiff Greatbatch Ltd.'s ("Plaintiff" or "Greatbatch") damages theories (*see generally* D.I. 649) ("Request for Discovery"), **IT IS HEREBY ORDERED** that Defendants' Renewed Motion (D.I.644) is **GRANTED IN PART** and **DENIED IN PART** and Defendants' Request for Discovery (D.I.649) is **DENIED,** for the reasons stated below.[1] **IT IS FURTHER ORDERED** that, no later than April 21, 2016, the parties, after meeting and conferring, shall submit a proposed redacted version of this Memorandum Order, after which the Court will issue a public redacted version.

---

1. AVX's Request for Oral Argument (D.I.674) on the Renewed Motion is **DENIED.**

## I. FACTS AND PROCEDURAL · HISTORY

### A. Discovery

The parties in this particularly contentious action for patent infringement[2] have endured, with the Court, a tortuous gauntlet of discovery disputes. (*See, e.g.,* D.I. 42, 131, 231, 293, 324, 355) Throughout, the Court has endeavored to clearly articulate the parties' discovery obligations and, when necessary, take steps to mitigate any undue prejudice suffered by one party as a result of the other party's lack of full compliance with discovery rules and rulings.

The Court's Default Standard for Discovery of Electronic Documents ("Default Discovery Standard") has governed discovery in this case since the first scheduling order was adopted on October 3, 2013. (*See* D.I. 21 at 1; *see also* D.I. 79 at 1)[3] Paragraph 4(a) of the Default Discovery Standard required Greatbatch to identify AVX products accused of infringement. (*See* Default Discovery Standard at 4) Pursuant to paragraph 4(a), Greatbatch identified AVX's Ingenio products as among those accused of infringement. (*See* D.I. 44 at 1)

Paragraph 4(b) of the Default Discovery Standard required AVX to "produce to the plaintiff the core technical documents related to the accused product(s), including but not limited to operation manuals, product literature, schematics, and specifications." (Default Discovery Standard at 4) On January 27, 2014, the Court held a teleconference with the parties regarding a dispute about AVX's obligation to produce core technical documents in accordance with paragraph 4(b). (*See generally* D.I. 68) During the teleconference, the Court ordered AVX to produce *all* core technical documents related to products accused by Greatbatch under paragraph 4(a), including the Ingenio products:

THE COURT: What basis is there that I should not require you to comply with your [paragraph] 4(b) obligations and produce *all core technical documents related to Ingenio?*

[COUNSEL FOR AVX]: Because, Your Honor, the product admittedly does not infringe.... I don't see the basis for requiring core technical production for a product that unarguably does not infringe.

. . .

THE COURT: I'm going to grant the plaintiff's first request. I don't see, under the circumstances of this case, any space in our default standards for the defendants not to produce *all core technical documents for all products that are accused by the plaintiff in 4(a).* It's implicit that the plaintiff must have a good faith basis for whatever it is accusing in 4(a).

. . .

THE COURT: *Discovery is very broad.*[4] What is relevant can be broad and in some circumstances might be somewhat beyond what even the plaintiff would concede is the scope of the patent.... I'm not persuaded on this record that what I am ordering is

---

2. Greatbatch initiated the instant action by suing AVX for patent infringement on April 25, 2013. (*See* D.I. 1)

3. The Court's Default Discovery Standard is available at http://www.ded.uscourts.gov (under "Clerk's Office" tab, click "Rules Policies & Standing Orders," then "Default Standard for Discovery," and then "Electronic Discovery Default Standard").

4. The pre-December 2015 version of the Federal Rules of Civil Procedure, including Rule 26, governed discovery in this case.

going to be unduly burdensome to the defendants.

(D.I. 68 at 25–26, 31) (emphasis added)

Greatbatch subsequently refined its infringement allegations and served discovery requests with respect to the Ingenio products. Then, on February 7, 2014, Greatbatch filed an amended complaint accusing AVX of infringing U.S. Patent No. 6,888,715 (" '715 patent"). (*See* D.I. 57 at 23–27) On February 28, 2014, Greatbatch served on AVX an Identification of Accused Products which specifically accused AVX's Ingenio products of infringing the '715 patent. (*See* D.I. 509–16 at 3; *see also* D.I. 72) On March 25, 2014, Greatbatch served a document request on AVX requesting "[a]ll documents concerning any changes in the design of any AVX Broader Feedthrough Filter Product since the commencement of this litigation," including documents concerning changes in the design of the Ingenio products.[5] (D.I. 509–19 at 43)

On April 7, 2014, the Court issued an Amended Scheduling Order, which ordered AVX to complete production of core technical documents by April 11, 2014. (*See* D.I. 79 at 1)

### B. *AVX's Late Document Production During Expert Discovery*

On June 18, 2015, AVX served an expert report from John Webster, Ph.D., which included as an exhibit a document that AVX had never produced during discovery: [Redacted] (D.I. 508 at 7) Greatbatch moved to strike significant portions of Dr. Webster's report because of AVX's late production of [Redacted] (*See generally* D.I. 359) AVX responded that its late production of a single document was inadvertent and not indicative of bad faith. (*See*

D.I. 373 at 5) ("While AVX regrets that [Redacted] was not produced earlier, there was no motivation for AVX to—and AVX did not—intentionally withhold the document.") The Court denied Greatbatch's requested relief as too broad under the circumstances, relying on AVX's representation that the late disclosure was unintentional and minimal, as it was limited to just one document. (*See* D.I. 382)

### C. *AVX's Late Document Production at Summary Judgment*

On August 24, 2015, Greatbatch moved for summary judgment of infringement by certain versions of AVX's Ingenio FFTs. (D.I. 508 at 7) On September 16, 2015, AVX produced five additional core technical documents for the Ingenio products. (*See* D.I. 509–12, –17, –21, –29, –30) One day later, AVX cited the belatedly produced documents in its opposition to Greatbatch's motion for summary judgment. (D.I. 434 at 17) The late-produced documents included mechanical drawings of pin washers used in Ingenio products that were directly relevant to any infringement analysis of the '715 patent. (*See, e.g.,* D.I. 508 at 8 (citing D.I. 509–21 at AVX00215390); *see also* Decl. of Dr. Richard Panlener, former General Manager at AVX ("Panlener Decl.") (D.I.646) at 3 ("[Redacted] ))

Greatbatch subsequently moved for sanctions against AVX for AVX's late production of core technical documents in connection with AVX's summary judgment briefing. (*See generally* D.I. 507) In AVX's brief opposing Greatbatch's motion for sanctions, AVX argued that the pin washer documents were **not** core technical documents. (*See* D.I. 522 at 7 n.10) This

---

5. All of the accused products in this case are "FFTs" or "feedthrough filter assemblies" (or products) which "are placed within pacemakers and defibrillators to protect the internal circuitry from high-frequency electromagnetic interference (e.g., radio waves or microwaves)." (D.I. 400 at 1)

contention is inconsistent with what is now plain from the record; the Panlener Declaration submitted with AVX's Renewed Motion makes clear that [Redacted] and, therefore, preventing Ingenio parts from infringing the '715 patent. (*See* Panlener Decl. (D.I.646) at 2–4) Indeed, the recently-submitted Panlener Declaration indicates that [Redacted] may be the most important component of Ingenio FFTs as relates to an infringement analysis of the '715 patent. (*See id.* at 7–10) (detailing [Redacted] to avoid infringing '715 patent) In light of Dr. Panlener's post-trial statements, it is clear that the documents AVX belatedly produced only in connection with summary judgment briefing *are* core technical documents.

### D. *Greatbatch's Motion for Sanctions*

On October 14, 2015, Greatbatch moved for sanctions pursuant to Federal Rule of Civil Procedure 37(b) based on AVX's late document production at summary judgment. (*See* D.I. 507) Greatbatch argued: "By failing to produce [the belatedly produced core technical documents] until after discovery closed, AVX deprived Greatbatch of the opportunity to question AVX's fact and expert witnesses about those core technical documents, and hindered Greatbatch's ability to pursue fact discovery regarding the design change and the reasons behind it" (D.I. 508 at 1) AVX observed in its brief opposing Greatbatch's motion for sanctions that its document collection efforts were "largely" performed *before* April 2014, even though documents evidencing key design changes to the pin washers were created *after* April 2014. (*See* D.I. 522 at 4) In essence, then, AVX admitted not fully complying with its duty to supplement its document production, to the extent it was creating new core technical documents.

The Court ordered the parties to present oral argument on Greatbatch's motion for sanctions at the pretrial conference. (*See* D.I. 547 at 4)

### E. *Pretrial Conference*

At the pretrial conference, on December 22, 2015, AVX opposed Greatbatch's motion for sanctions based, in part, on the argument that changing the pin washer size in the Ingenio products was *not* motivated by infringement concerns. (*See* Transcript ("Tr.") of Pretrial Conference (D.I. 594) at 44) AVX had made this same argument in its brief opposing the motion for sanctions, writing: "AVX does *not* contend that its current ingenio products do not infringe the '715 patent based on a design change that it purportedly made shortly after the Ingenio was accused of infringement." (*Id.* at 1 (emphasis in original; internal quotation marks omitted); *see also id.* at 3 ("AVX does *not* contend that it does not infringe because it uses a pin washer with a reduced inner diameter.") (emphasis in original)) Yet it is now clear from Dr. Panlener's post-trial Declaration that, in fact, [Redacted] patent. (*See* Panlener Decl. (D.I.646) at 7–10)

In connection with its motion for sanctions, Greatbatch asked the Court to "deem it established that, for all of AVX's Ingenio products made prior to March 28, 2014, the solder contacts the gold braze around the pins"—essentially asking for a dispositive finding of infringement of the '715 patent with respect to these Ingenio products. The Court denied Greatbatch's motion for sanctions without prejudice to renew at trial, finding that Greatbatch's requested relief was too broad but that Greatbatch should be permitted to renew its motion and request narrower relief based on "how things play out at trial." (Pretrial Tr. (D.I.594) at 68) The Court also noted its concern about Greatbatch (and the Court) learning so late in the case "what

appear to be basic facts about why this design change was made [to the Ingenio products], [and] when it was made." (*Id.* at 67) The Court also noted the exceptional nature of discovery in this case, including conduct by both sides, and determined that it warranted the unusual step of permitting the parties to introduce evidence related to discovery disputes at trial:

> Part of what I'm going to do in an effort to ensure hopefully a fair trial to both sides is I will treat as relevant all of this back and forth about discovery, the various disputes, what was produced and when, what was not produced, whether a witness was clear or not in a deposition, all of that which I would believe under normal circumstances would be irrelevant because it is essentially an opportunity to re-fight discovery disputes in front of the jury. I believe in the circumstances of this case, all of that is likely to be relevant and admissible because I imagine it will be probative of what weight the fact-finder should give to each side's showing with respect to infringement or non-infringement of this patent.

(*Id.* at 67–68) [6] Thereafter, however, the Court bifurcated, for a later trial, issues implicating the discovery disputes. (*See* D.I. 587)

### F. *AVX's Late Document Production Less Than Two Weeks Before Trial*

On December 29, 2015, just thirteen days before trial, AVX produced 171 documents "concerning the issue of changes to the Ingenio pin washer." (D.I. 564–1 at 1; D.I. 659 at 3) Counsel for AVX notified the

Court of the document production in a letter (D.I.564–1), in which counsel also "correct[ed]" some of the representations he had made to the Court a week earlier at the pretrial conference. (*See id.* at 1–3) Counsel stated the following in his letter:

> *I was aware* that if AVX witnesses had been asked at deposition, they would have testified that at some point, Mr. Rios[ [7]] raised the issue of his investigation with management at AVX Filters, and *that management was concerned with obviating the potential of any infringement of the '715 patent,* as well as solving the manufacturing problem. Since the date of the Pretrial Conference, and as a result of my review of certain emails in the supplemental document production described below, I learned that these management concerns arose earlier than I previously understood. *Accordingly, I believe that my representation should be corrected to state that* while defects and yield rates were the animating factors behind *the change in pin washer size,* the implementation of the change *was informed by* both yield rate improvement and *patent infringement concerns.*

(*Id.* at 2) (emphasis added)

On January 3, 2016, with just eight days left before the start of trial, Greatbatch filed a letter with the Court responding to AVX's late production and requesting the following relief: (1) "post-trial discovery into AVX's efforts to collect and produce responsive documents regarding Ingenio," (2) "a privilege log for all Ingenio documents [produced by AVX] in advance of trial," (3) "[r]eversal of summary judgment

---

6. The Court's decision in this regard was based on Greatbatch's discovery behavior as well.

7. Mr. Rigoberto Rios was "the AVX engineer responsible for AVX feedthrough filters"

made for Boston Scientific Corporation ("BSC"). (D.I. 522 at 5) AVX's accused Ingenio products were made for BSC. (D.I. 400 at 2–3)

of no willful infringement of the '715 patent," and (4) grant of summary judgment that AVX's Ingenio FFTs infringe the '715 patent. (*See* D.I. 570 at 7)

On January 5, 2016, the Court granted relief similar to what had been requested by Greatbatch. (*See generally* D.I. 573) Specifically, the Court (1) authorized Greatbatch to conduct post-trial discovery, (2) ordered AVX to produce after trial a privilege log for all Ingenio documents, (3) vacated the Court's prior grant of summary judgment of no willful infringement of the '715 patent, and (4) granted summary judgment that the Ingenio products infringe the '715 patent. (*See id.* at 2–3) ("January 5 Rulings") The Court reasoned that "[i]t would be unfairly prejudicial to require Greatbatch to prove at trial infringement of the '715 patent by a product for which AVX has only *now* produced core technical documents." (*Id.* at 3) (emphasis added) The Court considered and rejected providing Greatbatch less extensive relief, including the limited relief proposed by AVX. (*See id.* at 3) (considering and rejecting proposal for "further discovery and other limited relief proposed by AVX")

### G. AVX's Motion for Reconsideration

On January 7, 2016, AVX moved for reconsideration of the Court's January 5 Rulings and argued for "a continuance of the trial date or bifurcation of the '715 patent." (D.I.584) The Court denied AVX's motion for reconsideration without prejudice and denied AVX's request for a continuation of trial or bifurcation. (*See generally* D.I. 591) The Court reiterated the concerns motivating its January 5 Rulings: "The timing of AVX's production of core technical documents was such that seemingly the only practical options were to reward AVX by a continuance or bifurcation or diversion of Greatbatch's pretrial resources to a new issue, or instead to proceed to trial according to the schedule in place and resolve the issue to which the late production related against AVX." (*Id.* at 3)

### H. Trial

The Court held a jury trial beginning on January 11, 2016. During trial, an issue arose regarding Greatbatch's late production of a document relevant to price erosion lost profits damages for Ingenio products sold in 2015. (*See* Trial Tr. (D.I.693) at 739–44) The Court granted certain relief to AVX and permitted AVX to request post-trial discovery on price erosion lost profits damages related to Ingenio products sold in 2015. (*See id.* at 817–19)

On January 26, 2016, the jury returned a verdict in favor of Greatbatch, finding that the patents-in-suit, including the '715 patent, were not invalid and awarding damages of $37,500,000. (*See* D.I. 625)

### I. Post-Trial

On February 12, 2016, AVX renewed its motion for reconsideration of the Court's January 5 Rulings. (*See* D.I. 644) The parties completed briefing on the Renewed Motion on February 24, 2016. (*See generally* D.I. 645, 659, 666)

Also on February 12, 2016, pursuant to the Court's order during trial (*see* Trial Tr. (D.I.693) at 819), AVX requested post-trial discovery related to all of Greatbatch's damages theories. (*See* D.I. 649) Greatbatch subsequently withdrew its claim for 2015 damages for Ingenio products, without prejudice to Greatbatch reasserting its claim "should infringement of the '095 patent, infringement of the '715 patent, or damages for infringement of those patents be the subject of a second trial after appeal." (D.I. 650 at 1) The parties completed their submissions on this issue on February 25, 2016. (*See generally* D.I. 649, 650, 661, 662, 663, 665, 668)

## II. *LEGAL STANDARDS*

### A. *Motion for Reconsideration/Reargument*

■ AVX cites Local Rule 7.1.5 as a basis for its Renewed Motion. (*See* D.I. 645 at 3) A motion for reconsideration or reargument pursuant to Local Rule 7.1.5 is considered the functional equivalent of a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure Rule 59(e). *See Corning Inc. v. SRU Biosystems,* 2006 WL 155255, at *1 (D.Del. Jan. 20, 2006). Motions for reargument should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the Court. *See Karr v. Castle,* 768 F.Supp. 1087, 1090 (D.Del.1991); *Brambles USA, Inc. v. Blocker,* 735 F.Supp. 1239, 1240 (D.Del. 1990). Such motions are granted only if it appears that the Court has patently misunderstood a party, has made a decision outside of the adversarial issues presented by the parties, or has made an error not of reasoning but of apprehension. *See, e.g., Schering Corp. v. Amgen, Inc.,* 25 F.Supp.2d 293, 295 (D.Del.1998); *Brambles,* 735 F.Supp. at 1240.

■ A Court may alter or amend the judgment if the movant demonstrates at least one of the following: (1) a change in the controlling law; (2) availability of new evidence not previously available; or (3) a need to correct a clear error of law or fact or to prevent manifest injustice. *See Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999). Even where one or more of these conditions is satisfied, the Court may deny the motion where it would not alter the outcome. *See Becton Dickinson & Co. v. Tyco Healthcare Group LP,* 2006 WL 890995, at *2 (D.Del. Mar. 31, 2006).

### 2. *Sanctions—Court's Inherent Authority*

■ "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). These powers include "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45, 111 S.Ct. 2123.

■ In particular, the Court may impose dispositive sanctions for withholding evidence, as such withholding may amount to spoliation, and sanctions may then be necessary to remedy prejudice and deter future misconduct. *See Bull v. United Parcel Serv., Inc.,* 665 F.3d 68, 73 (3d Cir.2012) ("[A] party's failure to produce a document can have the same practical effect as destroying it and we reaffirm that, under certain circumstances, non-production of evidence is rightfully characterized as spoliation."); *see also Micron Tech., Inc. v. Rambus Inc.,* 917 F.Supp.2d 300, 328 (D.Del.2013) ("*Micron II*") ("Any lesser sanction would, in effect, reward [the spoliator] for the gamble it took by spoliating and tempt others to do the same.").

■ In *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79 (3d Cir.1994), the Third Circuit listed three "key considerations" for determining appropriate sanctions for spoliation of evidence: "(1) the degree of fault of the party who altered or destroyed the evidence: (2) the degree of prejudice suffered by the oppos-

ing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." "A determination of bad faith is normally a prerequisite to the imposition of dispositive sanctions for spoliation under the district court's inherent power, and must be made with caution." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1327 (Fed.Cir.2011) ("*Micron I*") (vacating District Court's choice of dispositive sanctions because, *inter alia*, District Court did not sufficiently explain why only dismissal would vindicate "trifold aims" of "(1) deterring future spoliation of evidence; (2) protecting the [prejudiced party's] interest; and (3) remedying the prejudice [a party] suffered as a result of [the spoliator's] actions"). "To make a determination of bad faith, the court must find that the spoliating party 'intended to impair the ability of the potential defendant to defend itself.'" *Micron II*, 917 F.Supp.2d at 315 (quoting *Schmid*, 13 F.3d at 80). The related concept of prejudice "turns largely" on "whether a spoliating party destroyed evidence in bad faith." *Micron II*, 917 F.Supp.2d at 319; *Micron I*, 645 F.3d at 1328. If the spoliation was done in bad faith, "the burden shifts to the spoliating party to show lack of prejudice." *Micron I*, 645 F.3d at 1328.

### 3. *Court's Case Management Authority*

 District Courts have inherent power to manage their own docket, *see, e.g., Ryan v. Gonzales*, —— U.S. ——, 133 S.Ct. 696, 708, 184 L.Ed.2d 528 (2013); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed.Cir.1988), and are authorized to "consider and take appropriate action" to facilitate the "just, speedy, and inexpensive disposition" of all matters before them, Fed. R.Civ.P. 16; *see also* Fed.R.Civ.P. 1. The Court of Appeals for the Third Circuit has commented on District Courts' discretion with respect to case management decisions:

As a general matter, we accord district courts great deference with regard to matters of case management. *See, e.g., In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817–18 (3d Cir.1982) ("[M]atters of docket control and conduct of discovery are committed to the sound discretion of the district court. We will not interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant." (citation and quotation omitted)); *Yesudian ex rel. U.S. v. Howard Univ.*, 270 F.3d 969, 971 (D.C.Cir.2001) ("Thus, given the great deference we owe district courts in what are effectively their case-management decisions, there was no reversible error in the court's decision to accept [the] late filing." (citation and quotation omitted)); *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 583–84 (1st Cir.1994) ("... We deem it self-evident that appellate courts cannot too readily agree to meddle in such case-management decisions lest the trial court's authority be undermined and the systems sputter." (citation and quotation omitted)).

*Drippe v. Tobelinski*, 604 F.3d 778, 783 (3d Cir.2010). The Federal Circuit has endorsed similar principles. *See generally Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1320–23 (Fed.Cir.2016).

### III. *AVX'S RENEWED MOTION*

AVX's Renewed Motion (D.I.644) seeks reconsideration of the Court's January 5 Rulings granting certain relief to Greatbatch. (*See* D.I. 573) The Court's January 5 Rulings (1) allowed Greatbatch to conduct post-trial discovery, (2) ordered AVX to produce a privilege log for all Ingenio

documents after trial. (3) vacated the Court's prior grant of summary judgment of no willful infringement of the '715 patent, and (4) granted summary judgment that the Ingenio products infringe the '715 patent. (*See id.* at 2–3) The relief granted in the Court's January 5 Rulings was motivated in large part by (1) AVX's late production of core technical documents less than two weeks before trial (AVX's "December 29 Production") and (2) AVX's misrepresentation to the Court at the pretrial conference, which AVX later attempted to correct, in part, by way of AVX's December 29 Production. (*See id.*) Crucially, the relief the Court granted in its January 5 Rulings was also the product of AVX's repeated late production of core technical documents and the fact that just days remained before trial was scheduled to begin.

Below, the Court addresses each aspect of the relief it awarded in its January 5 Rulings.[8]

### A. *Order Granting Greatbatch's Request for Post–Trial Discovery*

■ The first of the Court's January 5 Rulings granted Greatbatch's request for post-trial discovery into "AVX's efforts to collect and produce documents regarding the Ingenio products." (D.I. 573 at 2) This relief is clearly a matter of "docket control and conduct of discovery" that comes within the Court's broad case management authority. *Drippe,* 604 F.3d at 783. For obvious reasons, Greatbatch did not have sufficient time to adequately explore the circumstances related to AVX's December 29 Production before trial, which began on January 11. It is proper for the Court to permit Greatbatch to engage in this discovery now, after trial, to understand why AVX repeatedly produced core technical documents relating to the Ingenio products so late in the case. AVX's Renewed Motion is **DENIED** with respect to the Court's Order granting Greatbatch's request for post-trial discovery into the aforementioned issues.

### B. *Order Requiring AVX to Produce a Privilege Log*

■ The Court's January 5 Rulings ordered AVX to produce a privilege log for all Ingenio documents and permitted AVX to do so after trial. (*See* D.I. 573 at 2–3) As with the Court's Order granting Greatbatch's request for post-trial discovery, this relief comes squarely within the Court's case management authority, as it relates to the timing and management of discovery issues. Greatbatch is entitled to this relief because, before AVX's December 29 Production, Greatbatch was deprived of an opportunity to request a privilege log for a complete production of documents related to Ingenio. AVX's Renewed Motion is **DENIED** with respect to this ruling.

### C. *Vacation of Grant of Summary Judgment of No Willful Infringement*

The Court's January 5 Rulings vacated the Court's prior grant of summary judgment to AVX of no willful infringement of the '715 patent. (*See id.* at 3; *see also* D.I. 546 at 26 ("No Willful Infringement Order")) With respect to non-final judgments, such as the Court's No Willful Infringe-

---

**8.** "AVX asks the Court to consider Greatbatch's own failure to timely produce documents in this case and its potential unclean hands in connection with [AVX's] reconsideration request." (D.I. 645 at 5 n. 10) AVX also alleges that Greatbatch has been misleading about what documents it received and when. (*See, e.g., id.* at 1–3) In arriving at the decisions announced in today's Order, the Court has considered Greatbatch's conduct in this case.

ment Order, Federal Rule of Civil Procedure 54(b) provides as follows:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

*See also James River Ins. Co. v. Fortress Sys., LLC,* 2012 WL 6738534, at *3 (S.D.Fla. Dec. 31, 2012) ("Summary Judgment Order was not a final order. Accordingly, pursuant to Federal Rule of Civil Procedure 54(b), it is subject to revision at any time before the entry of a final judgment.").

■ This action involves more than one claim for relief, and the Court's No Willful Infringement Order adjudicated fewer than all of the claims at issue in this case. Therefore, the Court had discretion under Rule 54(b) to vacate or revise its No Willful Infringement Order at the time the Court issued its January 5 Rulings. *See Midmoutain Contractors, Inc. v. Am. Safety Indem. Co.,* 2013 WL 5492952, at *4 (W.D.Wash. Oct. 1, 2013) ("Under Rule 54(b), district courts have complete power over non-final orders and may vacate or revise them at any time, if doing so would be consonant with equity.") (internal quotation marks omitted).

■ Proving willful infringement requires " 'clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent' " and that " 'this objectively-defined risk ... was either known or so obvious that it should have been known.' " *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.,* 807 F.3d 1283, 1299 (Fed.Cir.2015) (quoting *In re Seagate Tech., LLC,* 497 F.3d 1360, 1371 (Fed.Cir.2007)). Proving willful infringement also requires a showing " 'that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer.' " *Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 769 F.3d 1371, 1382 (Fed.Cir.2014) (quoting *In re Seagate,* 497 F.3d at 1371).

■ In the circumstances of this case, equity' militates against vacating the January 5 Rulings to the extent they vacated the Court's No Willful Infringement Order. That is, it is appropriate under the totality' of the circumstances that willful infringement by AVX of the '715 patent be an issue with which AVX must contend. AVX's December 29 Production made clear that Greatbatch had previously—including at all times when AVX's motion for summary judgment of no willful infringement was pending—been unfairly prejudiced by being deprived of key evidence relevant to willful infringement of the '715 patent. AVX admitted in its letter to the Court describing its December 29 Production that certain of the late-produced documents reflected AVX's knowledge of the '715 patent and AVX's attempts to design around the patent. (*See* D.I. 564–1 at 2–3) Evidence of this nature is relevant to willful infringement. At the very least, the documents go to AVX's awareness of potential infringement of the '715 patent, an awareness which AVX had denied at the pretrial conference and had hid from Greatbatch during discovery.

In light of the above, AVX's Renewed Motion is **DENIED** with respect to the Court's No Willful Infringement Order.

### D. *Order Granting Summary Judgment of Infringement*

The Court's January 5 Rulings granted Greatbatch summary judgment of infringement of the '715 patent by AVX's Ingenio products ("Grant of Summary' Judgment of Infringement"). (*See* D.I. 573 at 3) AVX argues that this was a "draconian" and "dispositive" sanction. (D.I. 645 at 1) Greatbatch counters that this relief was warranted in light of AVX's misrepresentation, which AVX relied on to oppose Greatbatch's motion for sanctions at the pretrial conference, and in light of AVX's late December 29 Production of documents. .

▮ The Court's Grant of Summary Judgment of Infringement was based on two sources of authority. First, the Court exercised its case management authority to allow Greatbatch to proceed with trial on a date which had been scheduled many months earlier (*see* D.I. 79 at 1, 9) and to present its case for damages on the '715 patent under an assumption that the '715 patent was infringed. (*See* Final Jury Instructions (D.I.623) at 13) ("For purposes of damages only, you shall assume that AVX infringes the '715 Patent. You should draw no inference (positive or negative) as a result of this assumption with regard to the parties or the witnesses.") Second, the Court exercised its discretion to impose a dispositive sanction against AVX under the Court's inherent authority.

Regarding the first source of the Court's authority—the Court's case management authority—the Court finds no error in its decision to proceed at trial on January 11, 2016, as scheduled, and to permit Greatbatch to present its damages arguments for the '715 patent under an assumption of infringement. AVX lost the opportunity to have trial on the '715 patent proceed in AVX's preferred fashion when AVX—less than two weeks before trial—produced 171 documents, including core technical documents relating to infringement by AVX of Greatbatch's '715 patent. This grossly untimely production forced the Court to make a highly time-sensitive decision in order to ameliorate the evident unfair prejudice to Greatbatch. Having forced Greatbatch and the Court into this trying situation, it should have been no surprise to AVX that the result would be substantial, adverse case-management consequences of the kind now complained of by AVX. Thus, to the extent AVX's Renewed Motion asks the Court to reconsider its exercise of case management authority, AVX's Renewed Motion is **DENIED**.[9]

▮ With respect to the second source of the Court's authority—the Court's inherent authority to impose sanctions (including dispositive sanctions) "for conduct which abuses the judicial process," *NASCO*, 501 U.S. at 44–45, 111 S.Ct. 2123—the Court has now had time to review the record and circumstances of AVX's misrepresentation at the pretrial conference and AVX's December 29 Production

---

**9.** AVX suggests that it was prejudiced by the following jury instruction regarding infringement of the '715 patent: "For purposes of damages only, you shall assume that AVX infringes the '715 Patent. You should draw no inference (positive or negative) as a result of this assumption with regard to the parties or the witnesses." (Final Jury Instructions (D.I.623) at 13) This language was agreed to by the parties in their Joint Proposed Jury

Instructions. (*See* D.I. 606 at 15) In any case, the Court is firmly of the view that the instruction did not prejudice AVX with respect to other issues tried to the jury. AVX was rightly deprived of the opportunity to try the issue of damages for infringement of the '715 patent in its preferred manner—that is, at the same trial in which it also got to challenge infringement and validity of the '715 patent— but AVX nonetheless obtained a fair trial.

against the legal backdrop governing imposition of dispositive sanctions.[10] For the reasons discussed below, AVX's Renewed Motion is **GRANTED** with respect to the Court's Grant of Summary Judgment of Infringement, which the Court hereby VACATES. To the extent Greatbatch intends to maintain its claim for damages for infringement of the '715 patent, Greatbatch will be permitted to try infringement of the '715 patent at a second jury trial to be scheduled at a future date.

Under Third Circuit case law, dispositive sanctions may be warranted when a party engages in spoliation of evidence. *See Micron I*, 645 F.3d at 1327 (citing *Schmid*, 13 F.3d at 78). Withholding documents may amount to spoliation. *See Bull*, 665 F.3d at 73. In this case, AVX's December 29 Production may have amounted to "spoliation" under *Bull*, given the short amount of time left to Greatbatch to review the new documents and

engage in discovery necessary to understand the significance of those documents, and given the complexity of the issues in this case and the fact that trial was less than two weeks away. The Court need not definitively decide whether spoliation occurred, however, because the Court vacates its Grant of Summary Judgment of Infringement on other grounds, discussed below. For purposes of this Order only, the Court will assume that AVX's December 29 Production amounted to spoliation.

The Federal Circuit, applying Third Circuit law, has instructed that Courts should consider (1) evidence of bad faith, (2) prejudice to the opposing party, and (3) the appropriateness of dispositive sanctions, in lieu of lesser sanctions, before imposing dispositive sanctions for spoliation. *See Micron I*, 645 F.3d at 1327–29. Because the Court, upon further reflection, determines that a lesser, non-dispositive sanction is more appropriate, the Court will assume—for purposes of this Order only—bad faith[11] and prejudice,[12]

---

10. AVX left the Court with very little time to contemplate the appropriate course of action or to articulate the bases for its decision. Nor did AVX assist the Court by proposing a reasonable alternative to the severe sanctions sought by Greatbatch. Instead, AVX proposed offering to (1) "not use any of the documents produced in the [December 29 Production] as part of its affirmative case" (while reserving the right to use them in certain other contexts at trial); (2) "make Mr. Rios available for a limited deposition" on certain topics "at a location of Greatbatch's choosing" during the week before trial; (3) "consider additional requests by Greatbatch for limited depositions as necessary in light of the [December 29 Production]"; (4) "agree to pay Greatbatch's reasonable costs and fees associated with the foregoing limited deposition(s)"; and (5) "not oppose any motion Greatbatch believed was necessary to take any limited deposition agreed to by the parties with respect to the [December 29 Production]." (D.I. 564-1 at 3) The Court considered and rejected these lesser sanctions proposed by AVX. (*See* D.I. 591 at 3) ("AVX's counsel ... proposed relief that would have been insufficient to remedy the harm AVX's late production caused to Greatbatch.")

11. The Court makes no finding with respect to bad faith. It notes, however, that AVX's repeated late production of core technical documents, coupled with repeated misstatements about how and why AVX modified its design of the Ingenio pin washers, are at least arguably suggestive of bad faith. (*See* D.I. 573 at 1 n.3, 3) As discussed above, the record contains multiple statements by AVX that its motivation for the pin washer design change was *technical* and not *legal*. AVX corrected the record only *after* the Court denied Greatbatch's motion for sanctions without prejudice and *after* the Court determined that it would allow evidence related to discovery disputes to be presented to the jury. It appears from AVX's counsel that AVX decided to correct the record due to concern that certain trial witnesses (including Dr. Panlener) might contradict counsel's earlier representations. (*See* D.I. 564-1 at 2; *see also* D.I. 645 at 9) Dr. Panlener's *post-trial* Declaration carefully explains the circumstances of the pin washer changes (e.g., exactly which pin washers were used in Ingenio products and when, delineating by pin material, pin washer size, whether the pin washers were split, and the period of use), even depicting these details in a helpful

"Because the court has the inherent power to control litigation and assure the fairness of proceedings before it, the particular sanction imposed is within the sound discretion of the district court." *Micron II*, 917 F.Supp.2d at 323 (internal brackets, quotation marks, and citation omitted). As the Court further explained in *Micron II*.

The Third Circuit has established three factors that a district court, under its inherent power to impose sanctions, should consider in this regard: (1) the degree of fault of the spoliating party; (2) the degree of prejudice to the adverse party; and (3) whether there is a less severe punishment that would avoid substantial unfairness to the adverse party while still serving to deter similar spoliation by others in the future. *Schmid*, 13 F.3d at 79. The court's choice of sanction should ultimately promote the trifold aims of: (1) deterring future spoliation of evidence; (2) protecting the [adverse party's] interests; and (3) remedying the prejudice [the adverse party] suffered as a result of the spoliating party's actions. [*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999) ].

*Id.* at 324. Here, consideration of all of these factors leads the Court to conclude that the appropriate sanction is *not* the dispositive sanction of summarily deciding the '715 infringement issue against AVX. instead, the lesser sanction of depriving AVX of the opportunity to try damages and validity with respect to the '715 patent at the same trial at which infringement of the '715 patent is at issue, and instructing the jury determining damages to assume infringement of the '715, more appropriately balances the multiple, competing interests implicated by a difficult situation of AVX's making.

The *Schmid* factors support this conclusion. AVX was at fault. It was AVX that placed Greatbatch in the unfair situation of having to (1) review 171 newly-produced documents, (2) prepare for and take any needed discovery related to the new documents, (3) incorporate findings resulting from AVX's late production into its trial preparations, and (4) conduct all other trial preparations with less than two weeks to go before trial. In addition, AVX engaged in a pattern of producing core technical (relevant) documents only when absolutely necessary to support its own positions, rather than timely producing all relevant documents consistent with he Court's instruction that "what is relevant can be broad and in some circumstances might be

---

table. (D.I. 646 at 4) This clarity and candor were lacking prior to trial.

**12.** AVX focuses most of its briefing in support of its Renewed Motion on the purported immateriality or cumulative nature of the 171 documents in its late December 29 Production. AVX fails to meaningfully address the most significant aspect of prejudice expressed in the Court's earlier opinions: "It would be unfairly prejudicial to require Greatbatch to prove at trial infringement of the '715 patent by a product for which AVX has only now produced core technical documents. *There is insufficient time before trial to ameliorate this unfair prejudice* (e.g., through further discovery and other limited relief proposed by AVX)." (D.I. 573 at 3) (emphasis added) "It

appears that AVX expected Greatbatch and the Court to devote significant amounts of time and effort to scrutinizing AVX's late production *with just days left before trial,* to the detriment of other trial preparations Greatbatch was engaged in and to the detriment of other cases on the Court's docket." (D.I. 591 at 2–3) (emphasis added) Even assuming that the December 29 Production was in large part immaterial or cumulative, AVX did not disclose this to Greatbatch or the Court at the time, meaning that absent the Court's January 5 Rulings, Greatbatch would have had to revise its infringement theory on the '715 patent on the eve of trial, giving AVX an unfair advantage in trial preparations. (*See* D.I. 659 at 1)

somewhat beyond what even the plaintiff would concede is the scope of the patent." (D.I. 68 at 31)

The degree of prejudice that would have resulted to Greatbatch were it not for the relief granted would have been great. Yet the remedy the Court has arrived at adequately ameliorated that prejudice, by not requiring Greatbatch to divert its trial preparation as a result of AVX's December 29 Production and by permitting Greatbatch to proceed to prove its damages case concerning the '715 patent based on an assumption of infringement. Should Greatbatch ultimately prevail in proving AVX infringes the '715 patent, Greatbatch will not have to again prove damages (or again defeat AVX's invalidity challenge to the '715 patent). On the whole, the Court regards this result as a less severe punishment than was imposed in connection with the January 5 Rulings but one that nonetheless avoids substantial unfairness to Greatbatch while serving to deter conduct similar to AVX's by others in the future.

The *West* factors—deterring future spoliation of evidence, protecting Greatbatch's interests, and remedying the prejudice Greatbatch suffered as a result of AVX's actions—are also satisfied by the lesser sanction with respect to AVX's defense against the '715 patent, in combination with the other relief the Court granted.

Thus, in light of the exceptional circumstances of this case, the most appropriate, adequate sanction with respect to the issue of infringement of the '715 patent by the Ingenio products was a sanction that removed the issue from the January 2016 trial, but without giving AVX the benefit of its preferred mode of trying damages issues related to the '715 patent at a later trial. Allowing Greatbatch to try damages issues related to the '715 patent, based on an assumption of infringement, was sufficient punishment, consistent with the governing authorities. On further reflection, it was unnecessary for the Court to go further and actually decide the issue of infringement of the '715 patent in Greatbatch's favor as well. Because a lesser sanction is sufficient to punish AVX and cure the prejudice suffered by Greatbatch, the Court vacates its Grant of Summary Judgment of Infringement by this Order.

### E. *Conclusion*

AVX's Renewed Motion (D.I.644) is **GRANTED IN PART** and **DENIED IN PART,** as indicated above.

### IV. *AVX'S REQUEST FOR DISCOVERY*

AVX's Request for Discovery (D.I.649) seeks to reopen discovery with respect to damages. (*See id.* at 1) As noted above, Greatbatch has withdrawn its claim for 2015 damages for Ingenio products, without prejudice to Greatbatch reasserting its claim "should infringement of the '095 patent, infringement of the '715 patent, or damages for infringement of those patents be the subject of a second trial after appeal." (D.I. 650 at 1) The Court did not authorize AVX to request reopening of *all* discovery related to damages in its Order at trial. (*See* Trial Tr. at 817–19) Rather, the Court's Order permitted AVX to request additional discovery into the limited issue of 2015 price erosion lost profits damages for Ingenio products. (*See id.*) Because AVX's requested discovery is too broad, and because Greatbatch has withdrawn its claim for 2015 price erosion lost profits damages for the Ingenio products, AVX's Request for Discovery is **DENIED,** without prejudice to AVX raising its request again if Greatbatch seeks 2015 price erosion lost profits damages for Ingenio products as this case proceeds.