**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1851
_____

NELSON RYDER,
                                        Appellant

v.

JANET BARTHOLOMEW, CEVC, in their
respective official and individual capacities;
RENEE FOULDS, CUM/A, in their respective
official and individual capacities;
BRAD RITCHEY, CC, in their respective
official and individual capacities;
JAMES DELBAUGH, CO, in their respective
official and individual capacities;
EDWARD EBERSOLE, CO, in their respective
official and individual capacities;
DSCS ANTHONY LUSCAVAGE; MEGAN FETTERMAN;
DENNIS BRUMFIELD; OFC TAYLOR; OFC  BURGOS;
CO STAN WARIKI; CO W.C. HAMILTON; CO G.L. BORDNER;
PRISON HEALTH SERVICES INC; NICHOLLE L BOGUSLAW;
BRIAN DAVIS; DEREK ROCKWELL; PATRICIA GESSNER, LPN
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. Civ. No. 3-13-cv-01498)
District Judge:  Honorable Robert D. Mariani
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 8, 2017

Before: GREENAWAY, JR., GREENBERG and ROTH, Circuit Judges

(Opinion filed: November 8, 2017)

_____

OPINION*

_____

PER CURIAM

Nelson Ryder appeals a judgment entered by the District Court in his civil rights

action following adverse grants of motions to dismiss under Fed. R. Civ. P. 12(b)(6) and

for summary judgment under Fed. R. Civ. P. 56(a).

## I.    Background[1]

Ryder is a Pennsylvania inmate confined at SCI-Coal Township.  While working

in the prison's recycling program, Ryder was permitted to wash his work clothes on

Wednesdays in exchange for operating the program on weekends.  Because of his

religious beliefs, Ryder was to work only the Sunday shifts.

Corrections Officer James Delbaugh learned of Ryder's laundry arrangement and

"discontinu[ed]" it.  In response to Ryder's protests, Delbaugh threatened Ryder with a

reduction in pay and, as their exchange continued, with termination from the recycling

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

[1] The facts that follow are taken from Ryder's third amended complaint ("Complaint").
Insofar as the District Court dismissed certain of his claims under Fed. R. Civ. P. 12(b),
we accept as true Ryder's well-pleaded factual allegations.  Phillips v. Cty. of Allegheny,
515 F.3d 224, 231 (3d Cir. 2008).  Insofar as the District Court granted summary
judgment, we review the relevant evidence of record in the light most favorable to Ryder
as the non-movant.  Miller v. Am. Airlines, Inc., 632 F.3d 837, 844 (3d Cir. 2011).  In
our background recitation, Ryder's lengthy descriptions of the unlawful acts about which
he complains have been abridged, as we presume the parties' familiarity with the case.

2

job. Ryder complained about Delbaugh's conduct and related work issues in a grievance (No. 456907) filed on April 17, 2013. The following day, Ryder was fired from the recycling program. He filed another grievance, and the grievances were consolidated.

After termination from the recycling program, Ryder was assigned to landscaping detail in East Compound. Ryder found this work to be painful and inconsistent with medical restrictions issued as result of his disabling foot condition. Ryder also claimed that he was forced to work on a Saturday despite his religious beliefs.

Ryder filed this suit on June 2, 2013.[2] Named as defendants were several prison officials and employees ("the Commonwealth Defendants"), PHS, and certain PHS physician assistants ("the Medical Defendants"). Ryder raised: First, Eighth, and Fourteenth Amendment claims against the Commonwealth Defendants; First and Eighth

---

[2] Thereafter, Ryder: filed Grievance No. 463249 requesting a response to Grievance No. 456907; was denied a physical exam by a physician assistant employed by Prison Health Services, Inc. ("PHS"); filed Grievance No. 472157 complaining of delayed treatment after he fell down a staircase; and complained that he was impermissibly charged a copay for medical treatment, and that PHS had an unconstitutional policy of holding sick call within earshot of non-medical staff and other inmates. In addition, and despite work restrictions issued by a PHS physician assistant, Delbaugh forced Ryder to cut grass at East Compound, else he would be "charged with misconduct for refusing to work."
    While cutting the grass Ryder's knee buckled; he fell onto the push-mower and lacerated his leg. Ryder purportedly received inadequate care in retaliation for Grievance No. 472157, which prompted him to file Grievance No. 474685. He also filed Grievance No. 474656, claiming that although his leg wound leaked blood onto his bed linens, Delbaugh denied a request that the linens be changed or washed. Ryder slept on blood-soaked linens for four days, and his wound became infected. Grievance No. 474887, challenging those conditions, was denied. As were all other grievances referenced in Ryder's Complaint, with the exception of Grievance No. 474656 (relief granted in part).

Amendment claims, and professional negligence claims, against the Medical Defendants; and Monell[3] claims against PHS arising under the Eighth and Fourteenth Amendments.

After serving the defendants, Ryder propounded written discovery requests. None of the defendants answered. Instead, the Medical Defendants moved to stay discovery.

By order entered May 27, 2014, the Magistrate Judge extended the time in which the Commonwealth Defendants could respond to Ryder's Complaint, and granted the motion to stay discovery filed by the Medical Defendants (among other rulings). The Magistrate Judge later permitted the Commonwealth Defendants to respond to Ryder's pleading out of time, and contemporaneously denied Ryder's motion for entry of default.

The defendants all filed dispositive motions. PHS moved to dismiss Ryder's Complaint or for summary judgment, arguing that Ryder failed to establish PHS's personal involvement. The Medical Defendants moved to dismiss Ryder's Complaint on three grounds: (1) failure to exhaust institutional remedies; (2) failure to sufficiently plead deliberate indifference under the Eighth Amendment; and (3) failure to sufficiently plead professional negligence or obtain a certificate of merit, see Pa. R. Civ. P. 1042.3. The Commonwealth Defendants moved to dismiss the Complaint, or alternatively for summary judgment, based on Ryder's apparent failure to exhaust institutional remedies.[4]

_____

[3] Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).
[4] Failure to exhaust remedies under the Prison Litigation Reform Act ("PLRA"), is an affirmative defense to be pleaded by the defendant. Ball v. Famiglio, 726 F.3d 448, 458 (3d Cir. 2013). While the defense can be raised as a basis for dismissal under Rule 12(b)(6) if the inmate's failure to exhaust is apparent from the face of the complaint, see

The Magistrate Judge recommended that all defense motions be granted.  The

District Court accepted that recommendation with regard to PHS and the Commonwealth

Defendants, but declined with respect to the Medical Defendants because the Magistrate

Judge appeared to conflate the summary judgment and Rule 12(b)(6) standards in ruling

on their motion.  On remand, the Magistrate Judge issued a new report again

recommending that the Medical Defendants' motion be granted.  The District Court

adopted the new report and dismissed the remainder of the case on March 4, 2015.[5]

## II.    Discussion

As he proceeds pro se, we liberally construe Ryder's arguments on appeal and

discern the following issues for review:  whether it was an abuse of discretion for the

District Court to permit the Commonwealth Defendants to respond to the Complaint out

of time and, relatedly, whether it was error to deny Ryder's motion for entry of default

against those defendants; whether it was error for the District Court to grant summary

judgment to the Commonwealth Defendants based on a failure to exhaust remedies under

the PLRA; and whether it was error for the District Court to grant summary judgment to

id., here the Commonwealth Defendants relied not on Ryder's allegations accepted as
true but on dozens of documents submitted under cover of two prison-official
declarations.  We thus characterize and assess the Commonwealth Defendants' motion,
insofar as it pressed the exhaustion defense, as a motion for summary judgment.  Our
review is de novo.  See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009).

[5] The following week, Ryder inquired about a still-pending motion (construed by this
Court as seeking relief under Fed. R. Civ. P. 59(e)), and also appealed.  The District
Court denied Rule 59(e) relief, after which Ryder filed an amended notice of appeal.

the Commonwealth Defendants and PHS after staying discovery and rejecting Ryder's efforts under Fed. R. Civ. P. 56(d) to defer consideration of their motions.[6] We have jurisdiction under 28 U.S.C. § 1291, and address the issues in turn.

A.

The deadline for the Commonwealth Defendants to respond to Ryder's Complaint was May 23, 2014, but they requested and received an extension through June 26, 2014. After that deadline passed, with no response by the Commonwealth Defendants, Ryder filed a "Declaration for Entry of Default." Weeks later, the Commonwealth Defendants simultaneously moved for dismissal/summary judgment and to have their late-filed motion deemed timely under Fed. R. Civ. P. 6. Ryder then moved for default.

Rule 6 provides that a party who misses a filing deadline may receive an extension of that deadline for good cause and upon a showing that the party failed to timely act because of excusable neglect. Fed. R. Civ. P. 6(b)(1)(B). In assessing whether the Commonwealth Defendants' delinquent filing was born of excusable neglect, the Magistrate Judge appropriately looked to the Pioneer factors. Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 395 (1993). Those factors are: "the danger of

_____

[6] Any other claims Ryder intended to present either were insufficiently addressed in his opening brief and are thus waived, see Prometheus Radio Project v. FCC, 824 F.3d 33, 53 (3d Cir. 2016), or are insubstantial to the degree that they do not warrant discussion other than to say that they are without merit. We note that Ryder was permitted to file three reply briefs in this appeal, not so he could resurrect abandoned issues but so that he could fortify already-raised arguments in response to the appellees' multiple briefs.

prejudice," "the length of the delay and its potential impact on judicial proceedings," "the reason for the delay," and "whether the movant acted in good faith." Drippe v. Tobelinski, 604 F.3d 778, 785 (3d Cir. 2010) (citation omitted).

The District Court affirmed the Magistrate Judge's determination that the Pioneer factors all favored finding excusable neglect. Determining whether that was an abuse of discretion is our task on appeal. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 894-98 (1990). We undertake this review with caution, see In re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d 315, 320 (3d Cir. 2001), and will not disturb the underlying decision unless it rests upon a clearly erroneous finding of fact or an errant conclusion of law or we are convinced that a clear error of judgment was made after a weighing of the Pioneer factors. See P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 852 (3d Cir. 2006); Hanover Potato Prods., Inc. v. Shalala, 989 F.2d 123, 127 (3d Cir. 1993).

We find no such errors here. The right law was applied, and there are no clearly erroneous findings of fact or obvious errors in judgment. A trial court's discretionary case-management acts generally are entitled to deference. Drippe, 604 F.3d at 783. Furthermore, our Circuit has a decided preference for resolution of cases on the merits. Cf. McCurdy v. Am. Bd. of Plastic Surgery, 157 F.3d 191, 196-97 (3d Cir. 1998). For these reasons, we will not disturb the decision to grant the Commonwealth Defendants'

Rule 6(b)(1)(B) motion.[7]  We also will not disturb the denial of Ryder's "motion" to

enter default, which was rendered moot when relief under Rule 6(b)(1)(B) was granted.[8]

B.

The District Court accepted the recommendation of the Magistrate Judge that

Ryder's claims against the Commonwealth Defendants should fail due to non-exhaustion

of institutional remedies.  The Magistrate Judge had determined, inter alia, that even

viewing the evidence "in the light most favorable to Ryder, this Court finds that the

---

[7] Ryder resists this result, citing one of our non-precedential opinions and contending that the District Court did not consider whether the Commonwealth Defendants acted with diligence or professional competence.  See Op. Br. at 28; Reply Br. at 7.  We considered those things as independent factors in our pre-Pioneer excusable-neglect inquiry, see Dominic v. Hess Oil Corp., 841 F.2d 513 (3d Cir. 1988), and held, post-Pioneer, that they were "subsumed in the more general [Pioneer] consideration of 'reason for the delay.'" Bone Screw, 246 F.3d at 323 (citation omitted).  Although the Magistrate Judge did not explicitly consider the Dominic factors later subordinated by Pioneer, Ryder fails to show that those factors would weigh against a finding of excusable neglect.

[8] We pause here to make one related point.  Through his July 2014 declaration Ryder established that the Commonwealth Defendants were properly served with the Complaint and failed to respond.  "When a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a) (emphasis added).  Rule 55(a) describes a mandatory act by the court clerk (or the court), who should have entered default against the Commonwealth Defendants upon receipt of Ryder's declaration and verification of its factual averments.
Nevertheless, even if a default had been entered, we are confident that it would have been vacated, properly, for good cause shown.  See Fed. R. Civ. P. 55(c); Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir. 1982); see also Perez v. Wells Fargo, N.A., 774 F.3d 1329, 1338 (11th Cir. 2014) (Rule 6(b)(1)(B) standard is "more rigorous" than Rule 55(c) "good cause" standard).  To that end, Ryder fails to identify evidence supporting his argument that default was proper because counsel for the Commonwealth Defendants intentionally falsified dates on the waiver-of-service forms filed with the District Court. And we disagree with Ryder that the District Court abused its discretion in granting the Commonwealth Defendants' initial extension request.  Cf. Fed. R. Civ. P. 6(b)(1)(A).

8

Commonwealth Defendants did not interfere with his ability to pursue the grievance process . . . ."

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). That language sweeps broadly; the phrase "prison conditions" covers all "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Additionally, exhaustion must be in accord with applicable regulations and policies. Woodford v. Ngo, 548 U.S. 81, 83 (2006). If exhaustion is incomplete when an inmate files suit, dismissal is mandatory. See Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001); see also Nyhuis v. Reno, 204 F.3d 65, 77 n.12 (3d Cir. 2000). An inmate cannot exhaust claims pending in court and then seek to cure non-compliance with § 1997e(a) by filing an amended complaint. See Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002).

With those principles in mind, we have little trouble concluding that Ryder's claims against the Commonwealth Defendants all concerned "prison conditions" and were thus subject to the PLRA's exhaustion requirement, and, in addition, that the District Court properly granted summary judgment to the Commonwealth Defendants on Ryder's claims related to grievances lodged after Ryder filed this suit. See id. Ryder should have fully exhausted available remedies, and then filed another suit, if he wanted

9

federal court review of those claims without fear of an affirmative defense based on non-exhaustion under the PLRA.

A closer question is presented by the District Court's decision to grant summary judgment on Ryder's claims related to the two grievances consolidated as Grievance No. 456907, which were lodged pre-suit and concerned in part retaliatory termination of Ryder's prison job. While it is undisputed that Ryder did not avail himself of the prison's two levels of appellate review, "[a] prisoner need not exhaust remedies if they are not 'available.'" Ross v. Blake, 136 S. Ct. 1850, 1855 (2016).

Ryder argues on appeal that the grievance process was "unavailable" to him because of institutional delay and deceit. The Commonwealth Defendants counter that Ryder's argument is based on a faulty interpretation of the prison's grievance policy. Determining whether the parties' dispute is genuine and concerns a material fact, thus precluding summary judgment, cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), requires that we review the evidence of record in some detail.

Ryder filed Grievance No. 456907 on April 17, 2013, and it was entered into the prison's automated tracking system on April 19, 2013; it did not acquire a second tracking number after consolidation with his April 21, 2013 grievance.[9] The prison's response to Grievance No. 456907 seemingly should have been provided to Ryder by

---

[9] The Commonwealth Defendants submitted to the District Court copies of the Pennsylvania Department of Corrections Inmate Grievance System Procedures Manual ("DC-ADM 804") that was in effect during the relevant time period.

May 10, 2013. Cf. DC-ADM 804 § 1(B)(9) ("The Grievance Officer shall provide a written response to the inmate within 15 working days from the date the grievance was entered into the Automated Inmate Grievance Tracking System."). While there is nothing in DC-ADM 804 indicating that consolidation of grievances resets the original response deadline, it appears that such a reset occurred and the new deadline became May 13, 2013. The prison did not respond to Grievance No. 456907 by either May 10 or May 13, 2013. In any event, the record indicates that May 13, 2013, was actually used as the original response deadline. We will conform our discussion accordingly.

The prison submitted evidence that on May 20, 2013, it sought to extend the May 13, 2013 deadline to May 28, 2013.[10] For the extension request to be effective, Ryder was to be advised of the request in writing. See DC-ADM 804 § 1(B)(9). The record, construed in Ryder's favor, shows that he was advised of the extension request at the latest by May 24, 2013. That date did not precede the original grievance-response deadline, but DC-ADM 804 does not appear to place numerical time limitations either on when an extension request can be sought by the grievance officer or on when the inmate must be advised of the extension request. See Com. Defs. Br. at 12, 22.

In light of the above, the prison should have supplied Ryder with a response to Grievance No. 456907 by May 28, 2013. The Commonwealth Defendants submitted

---

[10] See DC-ADM 804 § 1(B)(9) (permitting 10-day extension if "investigation of the grievance is ongoing"). Ten working days from May 13, 2013, landed on May 27, 2013, which was Memorial Day.

11

evidence to the District Court that the institutional response to Grievance No. 456907 was dated May 21, 2013. But they submitted no evidence that the response was timely "provide[d]" to Ryder in accordance with DC-ADM 804 § 1(B)(9).

For his part, Ryder argued below that he did not receive a response until after the deadline, in early June 2013. Ryder supported his argument with a personal declaration and copies of his DC-135As, the forms used by the prison to encourage informal resolution of inmate concerns. See DC-ADM 804 § 1(A)(3). Ryder's May 21, 2013 Form DC-135A complained that no decision had issued for Grievance No. 456907. In her May 24, 2013 response to the Form DC-135A, the grievance coordinator said only that Ryder's "grievance due date was extended for further review." Notably, the grievance coordinator made no mention of the fact that a decision had (apparently) been reached three days earlier. After Ryder submitted another Form DC-135A, on June 4, 2013—in which he again lamented that he had not received a decision on Grievance No. 456907—the grievance coordinator's June 6, 2016 response both instructed Ryder that a decision denying the grievance had occurred on May 21, 2013, and was accompanied by a copy of that decision. By then, Ryder had filed this action.

The Commonwealth Defendants may ultimately prevail on their exhaustion defense (or on a different one); it remains to be seen. On the current record, however, we simply cannot conclude that their motion for summary judgment was properly granted. The evidence in support of Ryder's position that, for Grievance No. 456907, his institutional remedies were unavailable as a result of the prison's conduct is sufficiently

12

in excess of "a scintilla." Liberty Lobby, 477 U.S. at 252; see Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 154 (3d Cir. 2016) (observing that "a prison's failure to timely respond to an inmate's properly filed grievance renders its remedies 'unavailable' under the PLRA"); cf. Small v. Camden Cty., 728 F.3d 265, 273 (3d Cir. 2013).[11]

Therefore, we will vacate the District Court's judgment insofar as it granted the Commonwealth Defendants' motion. And we will remand for further proceedings between Ryder and the Commonwealth Defendants consistent with this opinion.

C.

District courts generally should not grant a defense motion for summary judgment unless "the plaintiff has had a full opportunity to conduct discovery." Liberty Lobby, 477 U.S. at 257; see also 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2741, at 413-16 & n.2 (3d ed. 1998). Here, the District

---

[11] The Commonwealth Defendants highlight that Ryder seemingly had ample time to appeal the denial of Grievance No. 456907, notwithstanding his receipt of the written decision after the response deadline had passed. Having sufficient time to appeal, while it could be a relevant fact, is not determinative of the exhaustion-unavailability question because the grievance policy does not require an inmate to initiate appeal proceedings until a written decision from the grievance officer is in hand, see Com. Defs. Br. at 23 n.14, which could occur by the response deadline, or sometime beyond it, or never. We emphasize here that we are concluding only that summary judgment was not appropriate on the limited record below, which contained evidence indicating, among other things, the prison's non-compliance with DC-ADM 804 and its failure on May 24, 2013, to advise Ryder that a decision on Grievance No. 456907 had already been rendered.

13

Court granted two summary judgment motions (PHS's and the Commonwealth Defendants') after staying all discovery in the case. We focus here on PHS's motion.[12]

On May 27, 2014, the Magistrate Judge granted the Medical Defendants' motion to stay discovery, directing that "all discovery is stayed pending resolution of any outstanding motions to dismiss." As of May 28, 2014—the following day—the only pending dispositive motion was the Medical Defendants' motion to dismiss under Rule 12(b)(6). Thereafter, PHS filed a dispositive motion based on extra-pleadings evidence.

The discovery stay thus created an evidentiary conundrum for Ryder. He could not elicit information from PHS to oppose its apparent motion for summary judgment until the District Court ruled on the Medical Defendants' motion to dismiss. And no such opportunity to elicit information would ever materialize because the Medical Defendants' motion to dismiss was not resolved until after PHS was granted summary judgment.

The optics of the situation are displeasing, particularly because an inmate is at a severe evidence-gathering disadvantage. Cf. Villante v. Dep't of Corr., 786 F.2d 516, 521 (2d Cir. 1986). We also find unpersuasive some of the reasons given by the

---

[12] Because we have already determined that summary judgment should not have been granted to the Commonwealth Defendants under Rule 56(a), we need not address whether the District Court should have held their motion in abeyance pending an opportunity for Ryder to take discovery.

Magistrate Judge in rejecting Ryder's efforts, through submissions under Rule 56(d),[13] to adjourn summary judgment proceedings pending an opportunity for discovery.[14]

Turning to PHS's motion, we observe that it challenged Ryder's various Monell claims, including those related to the infrequency of physical examinations and PHS's apparent policy of holding sick-call at the prison's housing unit under circumstances that made public Ryder's personal medical information.[15]  PHS's motion argued only that it did not provide medical services to the Pennsylvania DOC in 2013—when the events described in Ryder's Complaint took place—and thus could not be held liable on Ryder's claims.  PHS attached to its motion an unauthenticated letter from the DOC advising a

---

[13] "If a nonmovant shows by affidavit or declaration that . . . it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).  "[A] formal motion is not required to request discovery under Rule 56."  Shelton v. Bledsoe, 775 F.3d 554, 567 (3d Cir. 2015).

[14] For example, by order entered July 1, 2014, the Magistrate Judge rejected Ryder's renewed request for a Rule 56(d) continuance—made so that Ryder could gather evidence to address PHS's summary judgment claim of no personal involvement—for the "same reasons" it gave in a June 11, 2014 order rejecting Rule 56(d) relief, even though these prior "reasons" were stale (no summary judgment motions were pending as of June 11, 2014, but one was pending as of July 1, 2014) and inapplicable (insofar as the Magistrate Judge had previously relied on case law regarding stays pending disposition of motions to dismiss, not motions for summary judgment).

[15] PHS and its staff working in state prisons pursuant to contracts with the state act under color of state law for purposes of § 1983 when undertaking their contractual duties to treat the prison population.  See West v. Atkins, 487 U.S. 42, 54-57 (1988).  PHS cannot be held vicariously liable for the constitutional torts of its employees; instead, to hold PHS liable under § 1983, Ryder was required to establish that a constitutional violation resulted from an official policy, practice, or custom.  See Monell, supra, 436 U.S. at 690-91; cf. Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985).

contractor called Wexford Health Sources, Inc. that it was authorized to proceed with services described in a contract identified only by a string of numbers. Ryder unsuccessfully sought to adjourn disposition of PHS's motion under Rule 56(d).

The Magistrate Judge rejected PHS's argument because it "has not demonstrated that it was no longer under contract with the [DOC] during the time period complained of." However, the Magistrate Judge then proceeded to assess alternative bases for disposing of Ryder's claims that had not been advanced by PHS. For example, the Magistrate Judge determined that Ryder "failed to state" a claim against PHS insofar as he failed to state a cognizable claim against any of its employees. The Magistrate Judge also determined that, insofar as Ryder raised a claim based on PHS's apparent "policy of allowing medical personnel to discuss inmates' medical record within earshot of other inmates," the claim failed because "Ryder has not produced evidence showing that PHS had an affirmative policy or custom that encouraged its employees to disclose an inmate's medical records in an inappropriate setting or manner." (emphasis added). The District Court adopted the Magistrate Judge's analysis as its own.

We conclude that the District Court erred insofar it disposed of Ryder's privacy-related Monell claim, due to a lack of evidentiary support, without first permitting Ryder an opportunity to engage in relevant discovery.[16] In Doe v. Delie, 257 F.3d 309 (3d Cir.

---

[16] PHS argues on appeal that Ryder "waived any argument he may have had regarding the dismissal of PHS." PHS Br. at 7. We disagree. In his opening brief, Ryder targeted the District Court's order granting PHS's dispositive motion, described it as being

16

2001), we held that under the Fourteenth Amendment a "constitutional right to privacy in one's medical information exists in prison," though it "may be curtailed by a policy or regulation that is shown to be 'reasonably related to legitimate penological interests.'" Id. at 317 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987) ("Turner")). Ryder's Complaint sufficiently pleaded a plausible deprivation of that Fourteenth Amendment right. The District Court inappropriately shifted the summary judgment burden to Ryder to oppose an argument not made by PHS, cf. Celotex Corp. v. Catreett, 477 U.S. 317, 330-31 (1986), and then granted PHS's motion because Ryder failed to produce evidence he had been barred from gathering. Ryder was thus prejudiced by the District Court's premature adjudication of PHS's motion. On remand, PHS may well adduce evidence that the Turner factors[17] weigh in its favor (or that supports some other defense), but it

---

entered prematurely in light of his efforts to "defer consideration of summary judgment pending a period of discovery," and criticized the District Court's application of the Rule 56(d) standard as inconsistent with our precedent, see Op. Br. at 1, 26-27. This was sufficient. Cf. Holley v. Dep't of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999).

[17] As we have explained:

> [Turner] directs courts to assess the overall reasonableness of [prison] regulations by weighing four factors. First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it,' and this connection must not be 'so remote as to render the policy arbitrary or irrational.' Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison resources generally. And fourth, a court must consider whether there are alternatives to the regulation that 'fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests.'

17

has yet to do so. We will thus vacate the District Court's judgment insofar it granted

PHS's dispositive motion, and remand for further proceedings between Ryder and PHS

on Ryder's privacy-related <u>Monell</u> claim.

### III.    Conclusion

For the reasons given above, the judgment of the District Court will be affirmed in

part and vacated in part, and the matter will be remanded to the District Court.

---

<u>DeHart v. Horn</u>, 227 F.3d 47, 51 (3d Cir. 2000) (en banc) (citations omitted).