**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-4616

JEFFREY ALLEN DRIPPE,
                                    Appellant

v.

OFFICER TOBELINSKI, a/k/a "SKI";
RALPH GOTOTWESKI,

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(Civil Action No. 3-06-cv-01096)

District Judge: Honorable A. Richard Caputo

Argued November 17, 2009

Before: AMBRO, ALDISERT and ROTH, Circuit Judges
(Opinion Filed: May 17, 2010)

JANINE VINCI (ARGUED)
1011 W. Ritner Street
Philadelphia, PA 19148

NEIL E. BOTEL
427 Millbank Road
Upper Darby, PA 19082
    *Attorneys for Appellant*

BARBARA ADAMS, General Counsel
SUZANNE N. HUESTON, Chief Counsel
TIMOTHY A. HOLMES, Assistant Counsel (ARGUED)
Pennsylvania Department of Corrections
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA 17011
    *Attorneys for Appellee*

---

OPINION OF THE COURT

---

ALDISERT, <u>Circuit Judge.</u>

Jeffrey Allen Drippe, an inmate in an institution of the Pennsylvania Department of Corrections, appeals the order of the United States District Court for the Middle District of Pennsylvania granting summary judgment in favor of Officer

Ralph Gototweski because Drippe failed to exhaust his administrative grievance remedies before filing suit pursuant to 42 U.S.C. § 1983, as required by the Prison Litigation Reform Act ("PLRA").[1] 42 U.S.C. § 1997e(a). Drippe first argues that by the terms of the PLRA Gototweski waived the defense of failure to exhaust, asking our Court to hold as a matter of law that the PLRA imposes a strict timing requirement on institutional defendants. We decline to do so. In the alternative, Drippe argues that the District Court's entertainment of Gototweski's oral motion for summary judgment, on the eve of trial, violated Rule 6(b) of the Federal Rules of Civil Procedure and merits reversal. We agree and will remand to the District Court to permit Gototweski to file the appropriate motion under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure.[2]

I.

[1]Drippe originally filed a civil action pursuant to 42 U.S.C. § 1983. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[2] Drippe additionally argues that the District Court's dismissal on summary judgment violated Federal Rule of Civil Procedure 56 and Local Rules of the Middle District of Pennsylvania 7.1 and 7.5, requiring motions filed prior to trial to be in writing and accompanied by brief. Because we reverse on the basis of the Rule 6(b) violation, we do not reach these contentions.

3

A.

Drippe alleges that on August 1, 2004, he was forced to shower in a dirty shower area without proper footwear and by August 4, he had become extremely sick with flu-like symptoms and a swollen leg. (App.[3] 3.) Drippe alleges Gototweski came to his cell door, inquired after his welfare, stated "that looks really bad" and informed Drippe that the Unit Sergeant would be notified. (App. 3.) Drippe was not transported to the Medical Department until August 7. He was ultimately diagnosed with cellulitis. (App. 3.)

The Department of Corrections Grievance System provides a multi-step administrative grievance process as follows: (1) inmates file grievances with the institution's Grievance Coordinator; (2) if unsatisfied with the first step "Initial Review," inmates may file an "Appeal" of the decision with the Institution's Facility Manager (Superintendent); (3) after receiving the decision of the Superintendent, inmates may seek "Final Review" through the Chief Grievance Coordinator. (App. 95, 102, 107-110.) The Grievance Policy requires that "[t]he inmate shall include a statement of the facts relevant to the claim," and "[t]he inmate should identify any persons who may have information that could be helpful in resolving the grievance." (Appellee's Br. 14.)

---

[3]"App." refers to Appendix Volume I. "App. II" refers to Appendix Volume II.

Drippe filed at least five grievances while incarcerated. (App. 103, 113, 115, 122, 137.) Grievance # 95193 concerned medical care at SCI-Frackville; it did not specifically refer to a corrections officer. Final appeal was filed. (App. 132, 135, 138-143.) Grievances # 211023 and # 124157 concerned medical care at SCI-Graterford. (App. 111, 113.) Final appeal was filed for grievance # 211023. (App. 108, 119-121.) Gototweski has not worked at SCI-Graterford. Grievance # 239321 concerned medical care received at SCI-Graterford. (App. 122.) Drippe also filed grievance # 133607, challenging his sentence calculation, under a different inmate number. (App. 137.)

B.

Drippe filed suit in the District Court for the Middle District of Pennsylvania under 42 U.S.C. § 1983 for denial of prompt medical treatment. He first filed a complaint against an "Officer Tobelinski" on May 31, 2006. (App. 1.) He filed an amended complaint naming Officer Gototweski on December 15, 2006. (App. 5-7.) The complaint alleged that on August 4, 2004, Gototweski observed Drippe's injured leg and failed to notify the appropriate authority. (App. 5-7.) Gototweski filed an answer to the amended complaint, raising failure to exhaust as an affirmative defense. (App. 8, 12.)

The magistrate judge issued a scheduling order, requiring discovery to be concluded by February 1, 2008 and dispositive motions to be submitted by March 3, 2008. (App. II, at 1.)

5

Gototweski filed a motion for summary judgment on October 25, 2007, which was denied by the magistrate judge. (App. 17.) Gototweski filed another motion for summary judgment prior to the pre-trial conference, arguing failure to exhaust because none of the grievances reached Final Review. (App. 89.) During the pre-trial conference, Gototweski's attorney provided recently discovered exhibits regarding the grievances. These documents were filed under Drippe's previous inmate number and indicated that at least two grievances had properly been pursued to Final Review. (See App. 135-137.) Subsequently, the District Court entertained a third motion for summary judgment, presented orally, on the eve of trial. (App. 203.) The District Court sustained Gototweski's defense of failure to exhaust and dismissed the case, holding that the grievance "cannot fairly be said to have given prison officials notice of the person claimed here to be guilty of wrongdoing, nor the conduct that constituted the alleged constitutional violation." (App. II, at 28-31.) Although it acknowledged the motion was untimely, the Court reasoned that the affirmative defense of exhaustion raised a question of law that must be resolved by the Court prior to proceeding to trial on the merits. (App. II, at 28-31.) Notice of appeal was filed on November 21, 2008. (App. II, at 32.)

II.

We decline to read a strict timing requirement into the PLRA for prosecution of the affirmative defense of failure to exhaust. We exercise plenary review over questions of statutory

6

construction. <u>Spruill v. Gillis</u>, 372 F.3d 218, 226 (3d Cir. 2004).

The PLRA provides in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*.

42 U.S.C. § 1997e(a) (emphasis added). In <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006), the Supreme Court resolved a circuit split, holding that "the PLRA exhaustion requirement requires proper exhaustion." This accords with our previous 2004 decision in <u>Spruill</u>, that the PLRA includes a procedural default component and the determination whether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures.

Drippe urges us to adopt his construction of <u>Pavey v. Conley</u>, 544 F.3d 739, 740 (7th Cir. 2008), a case from the Court of Appeals for the Seventh Circuit, resolving the question of "whether a prisoner plaintiff in a suit for damages governed by the [PLRA] is entitled by the Seventh Amendment to a jury trial on any debatable factual issues relating to the defense of failure to exhaust administrative remedies." Under <u>Pavey</u>, a prisoner plaintiff is not entitled to a jury trial on the factual

7

issues of exhaustion, which the court determined is a question to be resolved by the trial judge. "Juries decide cases, not issues of judicial traffic control. Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to." Id. at 741. Pavey analogized the issue of exhaustion to subject matter jurisdiction, observing that not every factual issue that arises during litigation is triable to a jury as a matter of right. Id. Under Pavey, a district court must comply with a specific approach to exhaustion questions. The district court must first hold a hearing to address exhaustion, then order exhaustion-related discovery, and finally, the district court must resolve the question of exhaustion *before* commencing merits-based pre-trial discovery. Id. at 742. The decision concludes with an admonition that the question of exhaustion must be decided before merits discovery commences:

> We emphasize that discovery with respect to the merits should be deferred until the issue of exhaustion is resolved. If merits discovery is allowed to begin before that resolution, the statutory goal of sparing federal courts the burden of prisoner litigation until and unless the prisoner has exhausted his administrative remedies will not be achieved[.]

Id. Drippe reads this language in isolation and argues that, as a necessary corollary, the defense of exhaustion is waived if it is not prosecuted by the deadline imposed by the Court for

8

dispositive motions. He urges us to read this requirement into the PLRA in order to effectuate the dual purposes of the PLRA – to return control to prison administrators and to provide for the early and efficient resolution of disputes, thereby reducing the burden on the federal court system. He argues that the defense tests not the right to proceed to trial but the right to file suit, and as such it no longer serves the purposes of the PLRA once litigation has proceeded past the stages of discovery and pre-trial motions.[4]

Exhaustion of administrative remedies is an affirmative defense that need not be specially pleaded by the inmate or demonstrated in the complaint. Jones v. Bock, 549 U.S. 199 (2007). In Jones, the Court overturned the imposition, by the Court of Appeals for the Sixth Circuit, of a series of procedural restrictions allegedly gleaned from the PLRA – namely that inmates must specifically plead exhaustion and identify defendants in grievances. These requirements were not found in the prison's grievance policy, but were read into the PLRA by the Court of Appeals. The Supreme Court held that the PLRA's screening requirement "does not – explicitly or implicitly – justify deviating from the usual procedural practice beyond the departures specified by the PLRA itself." Id. at 214. In

---

[4]To the contrary, a jury trial is a significant burden on the federal court system as well as the federal jury pool, and the District Court's resolution of the issue on summary judgment conserved judicial resources.

9

concluding that there was no basis for determining that Congress intended to transform exhaustion into a pleading requirement, the Supreme Court engaged in a text-based analysis of the PLRA and determined unequivocally that the Court of Appeals' position had no basis in the text of the statute. "[T]he lower court's procedural rule lacks a textual basis in the PLRA. . . . [N]othing in the statute imposes a 'name all defendants' requirement . . . . Respondents argue that without such a rule the exhaustion requirement would become a 'useless appendage,' but the assertion is hyperbole[.]" Id. at 217 (citation omitted). Similarly, Drippe urges our Court to read into the PLRA a procedural requirement for which there is no textual basis. Although we agree with the Pavey court that exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge, we take guidance from Jones v. Bock, and will not read into the PLRA a timing requirement for which the PLRA provides no textual support.

## III.

Drippe argues additionally that the District Court's dismissal on oral motion for summary judgment – after jury selection, on the eve of trial, seven months after the Court's scheduling deadline – should be reversed because the District Court violated Federal Rule of Civil Procedure 6(b)(1), which requires that:

(1) In General. When an act may or must be done

10

within a specified time, the court may, for good cause, extend the time:

> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or

> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

We review the District Court's order of dismissal for abuse of discretion. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992). We hold that the District Court's entertainment of this motion contravened Rule 6(b), as construed by Lujan v. National Wildlife Federation, 497 U.S. 871 (1990), and we will remand.

## A.

As a general matter, we accord district courts great deference with regard to matters of case management. See, e.g., In re Fine Paper Antitrust Litig., 685 F.2d 810, 817-818 (3d Cir. 1982) ("[M]atters of docket control and conduct of discovery are committed to the sound discretion of the district court. We will not interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual

11

and substantial prejudice to the complaining litigant." (citation and quotation omitted)); Yesudian ex rel. U.S. v. Howard Univ., 270 F.3d 969, 971 (D.C. Cir. 2001) ("Thus, given the great deference we owe district courts in what are effectively their case-management decisions, there was no reversible error in the court's decision to accept [the] late filing." (citation and quotation omitted)); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 583-584 (1st Cir. 1994) ("The district court is afforded great leeway in granting or refusing enlargements and its decisions are reviewable only for abuse of that discretion. This deference is grounded in common sense. We deem it self-evident that appellate courts cannot too readily agree to meddle in such case-management decisions lest the trial court's authority be undermined and the systems sputter." (citation and quotation omitted)). However, there are times when a district court exceeds the permissible bounds of its broad discretion. This is such a case.

B.

In Lujan v. National Wildlife Federation, 497 U.S. at 895-896, the Supreme Court held that the district court did not abuse its discretion when it declined to admit affidavits filed untimely and in violation of the district court's scheduling order. The late filing was governed by Rule 6(b), which "not only specifically confers the 'discretion' relevant to the present issue, but also provides the mechanism by which that discretion is to be invoked and exercised." Id. Pursuant to the Rule, "any

12

*post*deadline extension must be 'upon motion made,' and is permissible only where the failure to meet the deadline 'was the result of excusable neglect.'" Id. at 896 (quoting Rule 6(b)). A contrary interpretation would directly contravene the Rule's specific delineation between "requests" and "motions." In a pivotal footnote, the Supreme Court explained that

> Rule 6(b) establishes a clear distinction between "requests" and "motions," and the one cannot be converted into the other without violating its provisions. . . . Rule 6(b)(1) allows a court ("for cause shown" and "in its discretion") to grant a "request" for an extension of time, whether the request is made "with or without motion or notice," *provided* the request is made before the time for filing expires. *After* the time for filing has expired, however, the court (again "for cause shown" and "in its discretion") may extend the time only "upon motion." To treat all postdeadline "requests" as "motions" (if indeed any of them can be treated that way) would eliminate the distinction between predeadline and postdeadline filings that the Rule painstakingly draws. Surely the postdeadline "request," to be even *permissibly* treated as a "motion," must contain a high degree of formality and precision, putting the opposing party on notice that a motion is at issue and that he therefore ought to respond.

13

<u>Id.</u> at 896 n.5.

Courts have construed <u>Lujan</u>'s construction of Rule 6(b)[5]

---

[5] <u>Lujan</u> was decided in 1990, and in 2007 Rule 6(b) was amended as part of the general restyling of the Rules to make them more easily understood. The changes were intended to be stylistic only. Fed. R. Civ. P. 6(b) advisory committee's note. At the time of <u>Lujan</u>, the text of Rule 6(b) read:

> [(b) Enlargement.] When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion
>> (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or
>> (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect[.]

<u>Lujan</u>, 497 U.S. at 895. The text of the rule presently reads:

> (b) Extending Time.
>> (1) In General. When an act may or must be done within a specified time, the court

14

to impose a strict requirement that litigants file formal motions for Rule 6(b) time-extensions when attempting to file in contravention of a scheduling order. See Smith v. District of Columbia, 430 F.3d 450, 456 (D.C. Cir. 2005) ("In [Lujan], the Supreme Court noted the distinction between this provision and Rule 6(b)(1), which allows a court to grant an extension if a 'request' is made before the time for filing expires. By contrast, the Court emphasized that post-deadline extensions may be granted only 'for cause shown' and 'upon motion.' Any post-deadline motion 'must contain a high degree of formality and precision, putting the opposing party on notice that a motion is at issue and that he therefore ought to respond.'" (quoting Lujan, 497 U.S. at 896 n.5)); Jones v. Cent. Bank, 161 F.3d 311, 314 n.2 (5th Cir. 1998) ("[R]ule 6(b)(2) requires that, once a deadline has expired (as occurred in the instant case), leave to file late can be granted only 'upon motion made.' The Supreme

---

may, for good cause, extend the time:
> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

The amendment does not alter the request-motion dichotomy, and the rule remains substantively the same as when addressed by Lujan.

Court said so explicitly in construing rule 6(b) in [Lujan]. . . . In other words, there is no discretion to grant a post-deadline extension absent a motion and showing of excusable neglect." (citing Lujan, 497 U.S. at 896)); ADAPT of Phila. v. Phila. Hous. Auth., 511 F. Supp. 2d 510, 515 (E.D. Pa. 2007) ("If the moving party does not seek an extension until after the time limit has expired, the court may exercise its discretion only if a motion is made and the moving party proves its failure to comply with the applicable deadline was the result of excusable neglect." (citing Lujan, 497 U.S. at 896 n.5)).

## C.

We are left with the question whether the District Court's last-minute hearing on summary judgment violated Rule 6(b), requiring reversal. We agree that Rule 6(b) and Lujan require motions, untimely under the Rules, to be filed in accordance with the requirements of Rule 6(b)(1)(B). Thus a party must make a formal motion for extension of time and the district court must make a finding of excusable neglect, under the Pioneer factors, before permitting an untimely motion. Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 395 (1993). Under Pioneer, the excusable neglect inquiry must consider "all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice . . . , the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id.;

16

see also In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 125 n.7 (3d Cir. 1999) (holding that Pioneer factors apply to all excusable neglect inquiries mandated under the Federal Rules of Civil Procedure). We do not evaluate the District Court's purported finding of excusable neglect because, notwithstanding Gototweski's averment otherwise, the record is devoid of evidence suggesting that such a finding was made.[6]

We conclude that the District Court violated Rule 6(b) by granting Gototweski's third and final motion for summary judgment. The scheduling order required all dispositive motions to be filed by March 3, 2008. On November 10, 2008, Gototweski filed his second motion for summary judgment on the grounds that none of Drippe's grievances reached the final and required stage of the grievance review procedure. On November 17, 2008, after additional documents came to light, Gototweski made an oral motion for summary judgment – after jury selection, on the eve of trial – premised on yet a new theory of failure to exhaust.[7] The Court entertained oral argument but

---

[6]In fact, the Court at first did not even acknowledge that it was entertaining the motion much less making a formal finding of excusable neglect. "Well, I'm not sure I'm entertaining your motion. I'm listening to you on the question." (App. 205.)

[7]Gototweski would have us style his oral motion as an amendment to his previous written motion. Because the second

17

gave Drippe's counsel no opportunity to present a considered response by brief. After the District Court heard oral argument on the oral motion, Drippe's counsel asked "Do you want us to brief?" to which the Court replied, "No. You've briefed it. I mean, basically you've talked about it." (App. 227.)

The District Court's entertainment of Gototweski's oral motion to dismiss, some seven months after the scheduling deadline for dispositive motions, does not comply with Rule 6(b) as construed by Lujan. Under Rule 6(b), late filings must "contain a high degree of formality and precision" in order to "put[] the opposing party on notice that a motion is at issue and that he therefore ought to respond." Lujan, 497 U.S. at 896 n.5. The discretion to entertain late motions is conferred by Rule 6(b), id. at 895-896, and the District Court's failure to comply with the Rule's requirements for extending time is therefore an abuse of discretion. The resolution of this issue – failure to exhaust administrative remedies – was highly fact-intensive and required a judgment by the District Court whether the specific grievances complied with the specific prison's grievance procedure. Drippe's counsel should have been given the opportunity both to research and to brief the issue. Compliance with the timing provisions of Rule 6(b) would have provided that opportunity. We will reverse and remand to permit Appellee Gototweski to submit a motion for extension of time in

motion itself violated Rule 6(b), an amendment necessarily violates it as well and we need not make this distinction.

18

compliance with Rule 6(b)(1)(B).

* * * * *

We will reverse the District Court's dismissal on summary judgment and remand to the District Court to permit Gototweski to file a motion for an extension of time under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure.

AMBRO, Circuit Judge, concurring

My colleagues and I agree that Fed. R. Civ. P. 6(b) was violated.  While the District Court makes an excusable neglect determination in the first instance, I write separately to provide further factual background of the case and to discuss my additional concern regarding Federal Rule of Civil Procedure 56(c).

Gototweski filed his answer on July 31, 2007, in which, among a laundry list of 19 affirmative defenses, he asserted exhaustion as one (and it came at the end of the list).  On August 1, 2007, the Magistrate Judge entered a scheduling order, setting a discovery deadline of February 1, 2008, and a dispositive motions deadline of March 3, 2008.  The order stated that "[t]he parties are also advised that once the deadlines have been established, extensions of those time periods will be sparingly granted and only for good cause shown, upon application made before the expiration of the relevant deadline."

Gototweski moved for summary judgment in October 2007, arguing that he could not have been personally involved in the alleged constitutional violation because he was not working at Drippe's institution on August 4, 2004, one of the four days Drippe alleges Gototweski acted with deliberate indifference.  Gototweski did not so much as mention exhaustion in his motion.

The District Court denied the motion in August 2008, reasoning that because Drippe's allegations spanned a time

frame of four days (August 4 through 7, 2004), Gototweski could have been personally involved in the incidents on the latter three days despite his absence on the first day. The Court informed the parties that the trial would be held in November 2008,[1] and in October provided a set date of November 17. Yet Gototweski had not mentioned "exhaustion" in the litigation since his inclusion of it as an affirmative defense in his answer, filed well over a year earlier.

On November 10, 2008, seven days before trial, Gototweski filed a "second motion for summary judgment," asserting, on the basis of an unsworn declaration by a Department of Corrections administrative officer, that Drippe did not complete the final step of the grievance process as to three of the four grievances he had filed, and thus they were unexhausted.[2] (The one grievance Gototweski agreed Drippe had completed was not relevant to the allegations in his lawsuit.)

---

[1] The summary judgment deadline was not the only deadline disregarded by Gototweski's counsel. On September 30, 2008, Gototweski moved for an "enlargement of discovery deadlines," even though the discovery period had expired almost eight months prior. The Court denied this motion as untimely.

[2] The Pennsylvania Department of Corrections has a three-step grievance process: 1) an initial grievance filed with the grievance coordinator at the institution, 2) an appeal to the Superintendent of the institution, and 3) a final appeal to the Pennsylvania Secretary of Corrections.

2

The case had by then proceeded for two years, through full discovery, and the deadline for dispositive motions had passed over *eight months* earlier.

Despite the assertion in Gototweski's motion, Drippe *had* completed the final step of the grievance process for the relevant grievance. Drippe's counsel, in his opposition memorandum to Gototweski's summary judgment motion, submitted a sworn affidavit by a paralegal in his law firm stating that an agent of the Department of Corrections had informed the paralegal that a final grievance appeal was *in the Department's records* under the proper name "Jeffrey Drippe."[3] Apparently, the final appeal had been filed under a different identification number than the number on the previous two grievance filings. Gototweski's counsel sent a copy of the final grievance to Drippe's counsel on November 12, 2008.

On the day of trial (November 17) and after jury selection, the District Court heard argument on Gototweski's summary judgment motion. But for the actions of Drippe's counsel—curiously, it took only one phone call by his paralegal to uncover the inaccuracy in the brief of Gototweski concerning a document that had been in the control of his employer for

---

[3] Drippe also argued that Gototweski's motion should be denied because it was filed in violation of Federal Rules of Civil Procedure 6(b) and 56, and Gototweski had not shown excusable neglect.

3

years—that faulty motion might have been granted. Gototweski's counsel corrected the record and agreed that Drippe had completed the grievance procedure. The basis for Gototweski's second motion for summary judgment, therefore, was no longer valid.

Incredibly, Gototweski's counsel chose to advance orally a *new* theory of exhaustion—one not made in his written motion for summary judgment—that the grievance he now agreed was exhausted was insufficient to give prison officials notice that Gototweski was charged with wrongdoing. This was yet a *third* motion for summary judgment, and this time it wasn't even written. With the prior, written motion, Drippe at least had an opportunity (however short) to rebut the basis for the motion—which he did successfully. With the oral motion, Drippe had no opportunity to develop a response.

Additionally, Gototweski's motion violated Fed. R. Civ. P. 56(c) as it read at the time of the events in this case.[4] It required at least ten days notice to the non-moving party on a

---

[4] Rule 56(c) has since been amended to read, in relevant part, that "a party may move for summary judgment at any time until 30 days after the close of all discovery." Discovery in this case closed on February 1, 2008, and 30 days later was March 2. Thus the November 17, 2008, summary judgment motion would have been improper under the new version of the rule by over eight months.

4

motion for summary judgment. Here, Drippe received only seven days notice on the second summary judgment motion and no notice on the third motion.

Our Court has long "insisted on strict compliance with the procedural requirements of Rule 56(c)." *Brooks v. Hussman Corp.*, 878 F.2d 115, 116–17 (3d Cir. 1989). As Judge Becker stated, "summary judgment motions within ten days of trial violate the plain words of Rule 56(c) and are unfair to opponents who may lack adequate time to respond." *In re School Asbestos Litig.*, 977 F.2d 764, 794 (3d Cir. 1992). How much more unfair, then, is an oral summary judgment motion made on the day of trial, after jury selection, with no opportunity for a plaintiff to prepare a response.

We require prisoners to adhere strictly to the procedural rules of the Prison Litigation Reform Act. It is not too much to ask that non-prisoner parties play by the same rules when the procedures are those of the Federal Rules of Civil Procedure.