**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-3246

_____

BRANDY S. CUFF,

Appellant

v.

COMMONWEALTH OF PENNSYLVANIA;
DEPARTMENT OF CORRECTIONS

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4:21-cv-00068)
District Judge: Honorable Matthew W. Brann

_____

Argued on September 11, 2024

Before: CHAGARES, <u>Chief Judge</u>, ROTH and RENDELL, <u>Circuit Judges</u>
(Opinion filed May 20, 2025)

Joshua J. Cochran          **(Argued)**
Schemery Zicolello
333 Market Street
Williamsport, PA 17701

      Counsel for Appellant

Hannah Kogan          **(Argued)**
Claudia M. Tesoro
Office of Attorney General of Pennsylvania
1600 Arch Street
Suite 300
Philadelphia, PA 19103

      Counsel for Appellee

———————

OPINION[*]

———————

ROTH, <u>Circuit Judge.</u>

Brandy Cuff, a former correctional officer at State Correctional Institute at Muncy (SCI-Muncy), appeals the District Court's order permitting the Commonwealth of Pennsylvania and Pennsylvania Department of Corrections (collectively, "DOC") to file an out-of-time summary judgment motion. She also appeals the District Court's order granting that motion and dismissing her hostile work environment and retaliation claims. We will affirm the first order, reverse the second, and remand for further proceedings.

**I.[1]**

Cuff began work as a correctional officer for DOC on October 29, 2018. Correctional officers at DOC spend their first 12 months on probationary status, during which they can be fired relatively easily. Beginning on May 19, 2019, Cuff was based at State Correctional Institute at Muncy. Cuff's complaint is based on a series of incidents which occurred during her eight-month tenure at SCI-Muncy, largely surrounding (false) rumors she was trading sexual favors for preferential treatment.

———————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Because we write for the parties, we recite only facts pertinent to our decision. In particular, we do not recite incidents the District Court found non-actionable where Cuff does not challenge that determination on appeal. As this case comes to us on a motion for summary judgment, we recite the record in the light most favorable to Cuff. *See Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020).

2

These incidents began during Cuff's first week, and involved numerous SCI-Muncy employees. A male sergeant questioned her ability to afford her car and asked her which supervisor she was married to. Officer Terease Maxwell made a comment about Cuff's dress that Cuff perceived as implying she was promiscuous. Sergeant Brenda Rippey berated her for viewing herself as "special" when she could not immediately take Rippey's call due to her assignment. Based on widespread stereotypes at SCI-Muncy regarding female employees with desirable assignments, Cuff viewed this as an accusation of trading sexual favors. At unspecified times, "multiple" other officers confronted Cuff about a rumor she was married to a captain at State Correctional Institute at Cole.[2]

The rumors intensified in October 2019, when Cuff's personal pepper spray was stolen from an off-site shooting range and left on SCI-Muncy property.[3] This prompted Rippey to file an incident report accusing Cuff of violating SCI-Muncy regulations, which in turn prompted an official investigation. When the investigation ultimately accepted Cuff's claim that the spray had been stolen, Rippey responded by accusing Cuff at a union meeting (at which Cuff was not present) of being a "bedazzled twat" and commenting that she "wonder[ed] who [Cuff] [was] fucking."[4] Word of Rippey's accusation spread widely, and Cuff was subsequently confronted by two of her

---

[2] Appx. 473a-474a ¶ 26. This rumors also reached the prison inmates, one of whom noted it in a complaint filed against Cuff.

[3] While the perpetrator of this theft was never determined, Cuff presents circumstantial evidence it was Maxwell. Appx. 128a-129a.

[4] Appx. 472a-473a ¶ 22. "Bedazzled twat" was an expression used at SCI-Muncy to refer to female correctional officers who traded sexual favors for preferential treatment.

3

supervisors regarding the rumors. Maxwell, in a subsequent altercation in front of a third officer, screamed and repeatedly told Cuff she was a "bedazzled twat" who should not be speaking to Maxwell.[5]

Cuff also alleges an incident, which she does not directly link to these rumors, in which a male officer at the metal detector performed an unnecessary search of Cuff's tampons and feminine napkins, and then attempted to make her open them for additional inspection. This officer subsequently yelled at Cuff for being "a fucking idiot" and "fucking liar" when she discussed his conduct with a supervisor.[6] A senior officer witnessed this exchange but elected not to intervene.

Cuff repeatedly reported these incidents to her supervisors. In response, they downplayed them, encouraged her to ignore them, and insinuated she might be fired if she filed a written report. Nevertheless, on January 2, 2020, after being hospitalized with stress-related symptoms, Cuff traveled to DOC's central office and met with a DOC equal employment opportunity (EEO) investigator. In addition to initiating an investigation, which concluded the "evidence [was] sufficient to establish Brandy Cuff was discriminated against,"[7] the investigator advised Cuff to seek a hardship transfer to another prison. Cuff formally requested such a transfer on January 6, 2020, and was advised to notify Roberta Confair (now Roberta Boyle), an SCI-Muncy human resources employee.

What happened in Cuff's conversation with Confair is disputed, but, according to

---

[5] Appx. 473a ¶ 24.
[6] Appx 470a-471a ¶ 17.
[7] Appx. 283a.

4

Cuff, Confair purposely provided false, detailed instructions that, as a routine prerequisite to transfer, Cuff should submit a resignation letter to SCI-Muncy and return her uniform. Subsequently, on January 9, 2020, Cuff submitted a handwritten, notarized resignation letter to Confair, in which she described herself as resigning from "SCI Muncy" and detailed her concerns of harassment.[8] Cuff continued to regularly check in on the status of her transfer, which DOC ultimately denied on grounds that she was no longer an employee.[9]

## II.

Cuff filed an administrative petition with the Equal Employment Opportunity Commission (EEOC), alleging sex discrimination and retaliation, on July 21, 2020, and an amended petition on August 6, 2020. She filed a civil complaint on January 12, 2021, alleging hostile work environment and retaliation claims under Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act (PHRA).

The District Court issued its initial scheduling order on April 22, 2021, under which fact discovery would close on March 1, 2022, and dispositive motions were due by May 2, 2022. The parties successfully moved three times to extend both deadlines. On November 30, 2022, the parties made their fourth and final extension request, which mentioned only the discovery-close deadline. The District Court granted the motion,

---

[8] Appx. 1461a.
[9] The process underlying this rejection is contested. Cuff claims DOC's central office was aware she had not resigned from DOC as a whole—and chose to deny the transfer anyway. District Court found DOC waited to see if the EEO would reinstate Cuff—and made inquiries into the validity of her resignation—but that there was no evidence DOC's central office believed her to still be employed. Nothing in this opinion hinges on this question.

setting the new discovery-close deadline at February 3, 2023, but leaving the dispositive motion deadline as February 8, 2023.

On July 17, 2023, learning it had missed this deadline, DOC moved for leave to file a dispositive motion *nunc pro tunc*, which the District Court granted summarily on July 20, 2023. DOC then moved for summary judgment on August 21, 2023. On November 28, 2023, the District Court issued its decision, granting DOC's summary judgment motion in full. This appeal followed.

## III.[10]

Cuff argues the District Court erred by: (1) allowing DOC's summary judgment motion to be filed at all; (2) dismissing her retaliation claims; and (3) dismissing her hostile work environment claims. We consider each challenge in turn.[11]

## A.

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Cuff argues that the District Court abused its discretion by permitting DOC to file a summary judgment motion more than five months after its scheduling order deadline, without making a formal finding of

---

[10] The District Court had jurisdiction over Cuff's federal claims under 28 U.S.C. § 1331 and her state claims under 28 U.S.C. § 1367. We have appellate jurisdiction under 28 U.S.C. § 1291. We review the modification of a scheduling order for abuse of discretion. *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d. Cir. 1986). Our review of a summary judgment order is plenary, applying the same standard as the District Court. *Qin v. Vertex Inc.*, 100 F.4th 458, 469 (3d Cir. 2024). Under that standard, we may affirm only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

[11] Because "[c]laims under the PHRA are interpreted coextensively with Title VII claims," we focus our analysis on Cuff's Title VII allegations. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013).

good cause or permitting responsive briefing. We disagree.

Cuff is correct that we have frequently affirmed district court orders finding no good cause under circumstances like these, and it arguably would have been preferrable for the District Court to hear Cuff's position before deciding that an extension would be granted.[12] But we are unable to conclude that the District Court's decision warrants reversal. "As a general matter, we accord district courts great deference with regard to matters of case management."[13] After the discovery deadline was extended to near the original dispositive motion deadline, it was within the District Court's discretion to later conform the schedule by setting a new dispositive motion date. Moreover, Cuff has not made the "clearest showing that the procedures have resulted in actual and substantial prejudice," which we normally require before setting aside a decision of case management.[14] Cuff does not dispute she had a full and fair opportunity to respond to DOC's summary judgment motion, nor does she suggest she would have been better served by waiting to meet DOC's same merits arguments on a motion for judgment as a

---

[12] *See, e.g.*, *E. Mins. & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d. Cir. 2000); *Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P.*, 785 F.3d 96, 102 (3d Cir. 2015).

[13] *Drippe v. Tobelinkski*, 604 F.3d 778, 783 (3d Cir. 2010).

[14] *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817–18 (3d Cir. 1982)).

matter of law.[15]  For these reasons, we will not disturb the District Court's decision permitting DOC to file its summary judgment motion out of time.

**B.**

To make out a prima facie case of Title VII retaliation, a plaintiff must show:  (1) a "protected employee activity"; (2) an "adverse action by the employer either after or contemporaneous with the employee's protected activity"; and (3) "a causal connection between the employee's protected activity and the employer's adverse action."[16]  The District Court found that Cuff's EOO complaint constituted protected employee activity, that if in fact "DOC tricked Cuff into resigning" this would constitute an adverse employment action, and that the close temporal proximity between Cuff's complaint and resignation was indicative of a causal connection.[17]  None of these determinations are at issue on appeal.

The District Court nevertheless found that Cuff had failed to make out a prima facie case of retaliation because the only evidence that DOC tricked Cuff into resigning was Cuff's own deposition testimony.  Given its self-serving nature, the District Court concluded this did not create a genuine question of fact.  On appeal, Cuff argues that this

---

[15] *See* Fed. R. Civ. P. 50(a); *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 321–22 (3d Cir. 2015) (holding, where a similar motion would have been proper, a district court's erroneous decision to hear a procedurally barred dispositive motion was non-reversible). This is not to say that a district court has discretion to ignore Rule 16(b)(4)'s good cause requirement where no party will be prejudiced.  It does not.  We rather emphasize that, in *our* capacity as a court of review, we may not reverse an erroneous district court decision which has not "affect[ed] the substantial rights of the parties."  28 U.S.C. § 2111.  Even assuming *arguendo* that the District Court erred in permitting DOC's untimely motion, our finding that no prejudice ensued therefore precludes reversal.
[16] *Canada v. Samuel Grossi & Sons, Inc*., 49 F.4th 340, 346 (3d Cir. 2022).
[17] Appx. 23a-24a.

8

determination was improper on a summary judgment motion.  We agree.

It is true that conclusory testimony by a self-serving party does not create a genuine question of fact.[18]  However, even "a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment."[19]  This remains true even where, as here, "the information is self-serving."[20]

The dispositive question, then, is whether Cuff has testified, based on personal knowledge, to specific facts sufficient to create a genuine question of material fact as to the voluntariness of her resignation.  We conclude that she has done so.  Cuff testified at length to a specific conversation, on a specific date, with a specific person.  She testified that Confair informed her that she "needed to bring in [her] uniforms" and "come in and sign a resignation if [she] intended to transfer out of Muncy and go elsewhere[,]" and that "[n]ot at any time did [Confair] say to [her] well, Cuff, you have to come back to work at Muncy to get your transfer."[21]  She testified that she specifically asked what she would wear at her next job, and was told she would "get [her] uniform when [she] transfer[ed] into whichever facility."[22]  She repeated these detailed claims throughout her deposition.

---

[18] *Sec'y U.S. Dep't of Labor v. Kwasny*, 853 F.3d 87, 93 n.32 (3d Cir. 2018); *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012).
[19] *Paladino v. Newsome*, 885 F.3d 203, 209 (3d. Cir. 2018); *see also Kirleis v.Dickie. McCamie & Chilcote, P.C.*, 560 F.3d 156, 161–62 (3d Cir. 2009); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002).
[20] *Paladino*, 885 F.3d at 209.
[21] Appx. 203a, 208a
[22] Appx. 209a.

Unsurprisingly, Confair's version of the conversation (which finds support in the record) is quite different, and a jury may well choose to credit it. But Cuff's testimony more than suffices to create a triable issue of fact. We therefore conclude that the District Court erred in granting summary judgment against Cuff on her retaliation claims.[23]

## C.

We next turn to Cuff's hostile work environment claims. Cuff must show that (1) she "suffered intentional discrimination because of [her] sex"; (2) "the discrimination was severe or pervasive"; (3) "the discrimination detrimentally affected" her; (4) "the discrimination would detrimentally affect a reasonable person in like circumstances"; and (5) "there was *respondeat superior* liability."[24] "'[S]everity' and 'pervasiveness' are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive."[25] Cuff argues the District Court took an overly narrow view of sex discrimination, downplayed the pervasiveness and severity of her allegations, and improperly found them not objectively severe. We consider each argument in turn.

### i.    Discrimination On the Basis of Sex

Although the District Court found nine of Cuff's allegations did not constitute sex discrimination, Cuff only defends four on appeal: (1) the incident with her feminine products; (2) being subsequently berated for reporting that incident; (3) Maxwell

---

[23] Having found the District Court erred in discounting Cuff's testimony, we do not address her argument that her testimony was in any event corroborated.

[24] *Nitkin v. Main Line Health*, 67 F.4th 565, 570 (3d Cir. 2023) (cleaned up).

[25] *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017).

confronting her about her shirt-button; and (4) the theft of her pepper spray.[26]

Incidents (1) and (3) are easily resolved since the District Court in fact expressly found that both were based on sex. Moreover, Cuff is correct that incident (2) should also have been treated as discrimination based on sex. While as "an abstract matter, retaliation against a person based on the person's complaint about sexual harassment is not necessarily discrimination based on the person's sex," we have emphasized that in nearly all cases this will not be amenable to resolution on summary judgment.[27]

Incident (4)—stealing Cuff's pepper spray and leaving it in the facility—presents a closer call, since it was facially sex-neutral and Cuff has not challenged that in some instances Maxwell's harassment was simply due to generalized animosity. Nevertheless, we have recognized that sex discrimination often presents itself in subtler, superficially gender-neutral instances of harassment.[28] Given Cuff's broader evidence of sex discrimination, including accusations by Maxwell (albeit later than this incident) that

---

[26] DOC argues that since Cuff lacks direct evidence of Rippey and Maxwell's motives, and does not contest that some incidents were non-gendered, **all** harassment she received was at most sexually "tinged" gender-neutral harassment. Opp. Br. at 24-25 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). This argument fails. We "have never required a plaintiff to demonstrate direct proof that her harasser's intent was to create a discriminatory environment." *Abramson v. William Paterson Coll.*, 260 F.3d 265, 278 (3d Cir. 2001). As discussed below, accusations of trading sexual favors bear inherent indicia of being gendered. Nor is it debatable that the confrontation over her feminine hygiene products was related to gender.

[26] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

[27] *Jensen v. Potter*, 435 F.3d 444, 454 (3d Cir. 2006), *overruled in part on other grounds* by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

[28] *See Jensen*, 435 F.3d at 451 (noting a court may not "isolate incidents of facially neutral harassment and conclude, one by one, that each lacks the required discriminatory animus"); *Cardenas v. Massey*, 269 F.3d 251, 263 (3d. Cir. 2001); *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 148–49 (3d Cir. 1999).

Cuff was a "bedazzled twat," a reasonable jury could find this incident as well to be motivated by sex. That suffices.

### ii.    Pervasiveness or Severity

Whether harassment is pervasive or severe "is not, and by its nature cannot be, a mathematically precise test."[29] Factors include "the frequency of the discriminatory conduct, its severity, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interferes with an employee's work performance."[30] Critically, we look to "the totality of the circumstances" at issue, "rather than parse out the individual incidents" and analyze them one by one.[31] While the District Court accurately stated this standard, we find its application of it was flawed.

The District Court found that Cuff had only provided evidence of "eight incidents and one rumor," some of which it considered "relatively benign," and concluded this was insufficient to meet her burden.[32] As an initial matter, the District Court failed to account for the two additional incidents we have determined to be plausibly gender-based. It also appears to have given no weight to Cuff's claim that multiple officers confronted her

---

[29] *Harris*, 510 U.S. at 22.

[30] *Id.* The Supreme Court has indicated conduct will generally suffice if it would be reasonably expected to "detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Id.* at 22-23.

[31] *Mandel*, 706 F.3d at 168.

[32] Appx. 19a-21a. DOC argues that, in weighing Cuff's harassment claim, we should find all allegations except for the "bedazzled twat" union incident unexhausted. We disagree. The District Court correctly determined that Cuff's particularized allegation that she was "verbally harassed and harassed by email by other employees at SCI Muncy" exhausted those allegations not otherwise encompassed by her "bedazzled twat" charge. *See Simko v. U.S. Steel Corp.*, 992 F.3d 198, 209 (3d Cir. 2021).

12

regarding the SCI-Cole rumor.[33]  Given that all events at issue appear to have occurred

within a five-and-a-half month period, Cuff was apparently encountering harassment at

least once every other week on average.[34]  Even concatenated, her allegations thus go

further than those we have generally held inadequate at the summary judgment stage.[35]

More fundamentally, the District Court failed to give adequate weight to the way

in which Cuff's allegations form a unified mosaic.  Except for the feminine-products

search and its aftermath, each allegation is interwoven with a common rumor—that Cuff

was trading sexual favors for special treatment.  As we recognized in *Spain v. Gallegos*,[36]

such rumors are humiliating, inherently gendered, and if serious can serve as the basis for

a Title VII claim.[37]  While recognizing *Spain*'s relevance, the District Court nevertheless

distinguished it because it found the rumors alleged by Cuff occurred during a "brief

---

[33] This is not a case where the plaintiff failed to "give any specifics at all" regarding an allegation and rested on "vague statements" they "could not describe" under questioning. *Nitkin*, 67 F.4th at 570–71.  While Cuff's testimony is vague regarding how often she was confronted with the SCI-Cole rumor, it describes with sufficient detail at a minimum two additional instances of harassment.  *See id*. at 571 n.3.

[34] The latest incident appears to have occurred in October 2019, and counsel for DOC took the position at oral argument that Cuff experienced no harassment post-October.

[35] *See*, *e.g.*, *Qin*, 100 F.4th at 470–71 (three comments over more than 18 years); *Nitkin*, 67 F.4th at 569 (seven comments over three and a half years, where persecutor "never propositioned [appellant] for a date or sex, never touched her, and *never directed sexually inappropriate comments specifically at her*" (emphasis added)); *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 182 (3d Cir. 2020) ("isolated" offensive greetings and one comment regarding appellant's home country, with "no evidence that [perpetrator] made these comments in the presence of other employees with an attitude of prejudice" (cleaned up)).

[36] 26 F.3d 439 (3d Cir. 1994).

[37] *Spain*, 26 F.3d at 447–50; *see also Parker v. Reema Consulting Servs.*, 915 F.3d 297, 305 (4th Cir. 2019) (noting "it goes right to the core of somebody's merit as a human being to suggest they were promoted not on worth but for sexual favors").

period" and were not "widespread or enduring."[38] This conclusion only follows, however, if Cuff's post-union-meeting allegations are viewed in isolation. Viewed holistically, Cuff has provided evidence of a rumor running at least from May through October, which reached at least four supervisors, three colleagues, the SCI-Muncy inmates Cuff was supervising, and everyone at the union meeting. This is neither so brief nor so confined to be non-hostile as a matter of law.

The District Court also noted that, unlike in *Spain*, the superior Cuff was said to be having an affair with did not foster the rumors. This precise factor was not critical in *Spain*.[39] Instead, we used it to distinguish the case from "idle gossip" such as "rumors concern[ing] the behavior of a co-worker outside of the workplace" or deriving from a "misperception of a supervisor's and employee's frequent but necessary, job-related interaction."[40] Here, Cuff presented evidence that the rumors derived from invidious stereotypes, that her colleagues humiliated her regarding the rumors, and that her superiors repeatedly refused to take any action to address them. Collectively, these factors take the rumors regarding her sexual activity outside of the realm of standard workplace gossip.[41]

---

[38] Appx. 20a–21a.

[39] Immediately after noting this factor, we cited approvingly to the holding of *Jew v. Univ. of Iowa*. *See Spain*, 26 F.3d at 449 (quoting *Jew v. Univ. of Iowa*, 749 F. Supp. 946, 959 (S.D. Iowa, 1990)). Unlike in *Spain*, "nothing in *Jew* indicate[d] that the supervisor was spreading the rumors." *Spain*, 26 F.3d at 444 n.5.

[40] *Id.* at 449.

[41] While the rumors may not have had as significant an impact on Cuff's professional advancement as those in *Spain*, i*d,* at 444, we do not consider this sufficient to avoid a jury—particularly since Cuff's testimony regarding Maxwell and Rippey goes further than the social ostracization testified to in *Spain*. *See id.* at 444 n.4.

14

In short, we are unable to say that, as a matter of law, Cuff's allegations boil down to "the ordinary tribulations of the workplace" and conclude that a reasonable jury could find that they amounted to harassment as a matter of law.[42]

### iii.    Objective Reasonableness

The District Court also found Cuff's allegations failed the objective reasonableness prong of our Title VII test. In practice, we have recognized that the pervasiveness/severity and objectivity prongs almost always "coalesce into a single inquiry: did the plaintiff suffer retaliatory harassment severe or pervasive enough to alter the conditions of [her] employment and create an abusive working environment?"[43] For the same reasons discussed above, we find that a reasonable employee would be detrimentally affected by the workplace environment alleged by Cuff.

### IV.

For the reasons set forth above, genuine issues of material fact regarding both Cuff's hostile work environment and retaliation claims preclude the District Court's grant of summary judgment. While we will affirm the District Court's order permitting an out-of-time dispositive motion, we will reverse its order granting summary judgment.[44]

---

[42] *Faragher v. City of Boca* Raton, 524 U.S. 775, 788 (1988).

[43] *Jensen*, 435 F.3d at 451 (internal quotation omitted); *see also Andrews v. City of Phila.*, 895 F.3d 1469 (3d Cir. 1990) (noting this prong is targeted at "'hypersensitive' employee[s]").

[44] We decline DOC's invitation to affirm on the alternative ground that the *Ellerth-Faragher* defense applies because DOC has not identified which "corrective opportunities" Cuff "unreasonably failed to take advantage of." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Moreover, for the reasons discussed previously, a factfinder could credit Cuff's testimony that she complained of harassment to her supervisors, was threatened with termination should she file a written report, and suffered retaliation when she took her complaints to the EEO.

Cuff v. Pennsylvania

No. 23-3246

CHAGARES, <u>Chief</u> <u>Judge</u>, dissenting.

I respectfully disagree with my learned colleagues on the threshold issue of whether the District Court abused its discretion in issuing an order granting the Pennsylvania Department of Corrections' ("DOC") motion filed over five months after the court's dispositive motion deadline, permitting the DOC to file a summary judgment motion. The order permitting the untimely summary judgment motion omitted any mention of a standard required by the Federal Rules of Civil Procedure, and the record does not indicate consideration of such a standard. This was not consistent with the sound exercise of discretion. I would therefore vacate the District Court's judgment and remand for reconsideration of the DOC's motion for leave to file its untimely summary judgment motion.

After Brandy Cuff, a former corrections officer for the DOC, filed this suit, the District Court set its final dispositive motion deadline to February 8, 2023. But the DOC did not move for summary judgment by that date. Instead, the DOC filed a "Motion for Leave to File Dispositive Motions <u>Nunc</u> <u>Pro</u> <u>Tunc</u>" more than five months after the deadline, explaining that counsel "mistakenly noted that there were no active deadlines in this case." Appendix ("App.") 53. The DOC's motion advised that Cuff opposed the motion. The District Court issued an order granting the motion for leave to file three days later, before Cuff could submit her written opposition to the motion. The DOC filed a motion for summary judgment by the new deadline, which the District Court also

granted. Cuff's first argument on appeal is that the District Court abused its discretion in allowing the DOC to file an untimely summary judgment motion.

District courts are accorded "great deference with regard to matters of case management," Drippe v. Tobelinski, 604 F.3d 778, 783 (3d Cir. 2010), but that deference is not boundless. The Federal Rules of Civil Procedure constrain discretion over case management. In particular, Rules 6 and 16 restrict the circumstances in which district courts may grant time extensions. Rule 6(b)(1)(B) permits an extension only "for good cause . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent."[1]

We have recognized that "there is no discretion to grant a post-deadline extension absent a motion and a showing of excusable neglect" under Rule 6(b)(1)(B). Drippe, 604 F.3d at 784 (emphasis added) (quoting Jones v. Cent. Bank, 161 F.3d 311, 314 n.2 (5th Cir. 1998) (Smith, J., dissenting)). Precedent from our sister Courts of Appeals confirms that Rule 16(b)(4) imposes a similar restriction as Rule 6(b)(1)(B). See, e.g., Bowman v. Korte, 962 F.3d 995, 998 (7th Cir. 2020) (vacating a district court order that did not satisfy either Rule 6(b)(1)(B) or Rule 16(b)(4)); Petrone v. Werner Enters., Inc., 940 F.3d 425, 434 (8th Cir. 2019) ("[T]he good-cause standard is not optional." (internal

---

[1] Cuff argues that Rule 16(b)'s "good cause" standard should apply to her argument, as it pertains to scheduling orders. Cuff Br. 14–18. The DOC mentions only the Rule 6(b) standard, and its motion did not explicitly seek modification of the scheduling order. DOC Br. 15. Because the District Court's summary order did not meet the standard set forth in either Rule, we need not decide which applies (or if both do).

quotations omitted)); <u>High Point Design LLC v. Buyers Direct, Inc.</u>, 730 F.3d 1301, 1319–20 (Fed. Cir. 2013) ("Even if the district court was implicitly applying the good cause standard under Rule 16(b), moreover, the court failed to explain why good cause did not exist under the circumstances here. . . . Accordingly, we vacate the district court's dismissal . . . and remand for reconsideration.").

The DOC's motion to file <u>nunc pro tunc</u> supplied the District Court with a proposed form of order that omitted any mention of good cause or excusable neglect. The order merely stated that "upon consideration" of the DOC's request to file <u>nunc pro tunc</u>, the request was granted. App. 3. This statement did not meet the definition of "excusable neglect" or "good cause." It may well be that the highly experienced and conscientious District Judge in this case did consider the appropriate standard(s), but such consideration does not appear on the record. Although I do not suggest that every order must contain or be accompanied by an application of relevant Rules, the proposed form of order proffered by the DOC and ultimately issued by the court bore no indication that the standards set forth in the Rules had been considered or met.

My colleagues in the majority conclude that because Cuff suffered no prejudice from this time extension, the District Court acted within its discretion to permit the DOC's untimely filing. I disagree. Prejudice is not a prerequisite to applying the plain text of the Federal Rules of Civil Procedure. And it does not override the explicit threshold(s) set forth in the Rules. In addition, it is far from clear that Cuff was not prejudiced. Cuff had no opportunity to respond in writing to the DOC's motion to file <u>nunc pro tunc</u>. We therefore have little basis to presume a lack of prejudice from the

3

DOC's late-game (and initially successful) motion for summary judgment. See In re O'Brien Env't Energy, Inc., 188 F.3d 116, 127 (3d Cir. 1999) ("[P]rejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence."). The majority reasons that Cuff was not prejudiced because she would not "have been better served by waiting to meet DOC's same merits arguments on a motion for judgment as a matter of law." Maj. Op. at 7–8. But this logic erases any rule constraining the grant of untimely motions.

District courts have broad — but not unlimited — discretion in managing cases. I would not reach the merits of the DOC's summary judgment motion because it was untimely and the delay was not properly excused under the Federal Rules of Civil Procedure. While I understand that the result I favor could create what one might consider an avoidable inefficiency, I believe that this is the result compelled by the Rules. I would vacate and remand for reconsideration the DOC's motion for leave to file its untimely motion for summary judgment. I therefore respectfully dissent.

4