**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2928
_____

VAUDRAL LUXAMA; CHANDLER LUXEUS; JAVIER R. GARCIA; SANTOS
MALDONADO; CHANEL FONTIN, individually and as class representatives;
KIMBERLY M. BONHOMME

v.

IRONBOUND EXPRESS, INC.,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2:11-cv-02224)
Magistrate Judge: Honorable James B. Clark, III
_____

Submitted Under Third Circuit L.A.R.34.1(a)
on June 30, 2025

Before: SHWARTZ, FREEMAN, and SMITH, *Circuit Judges*

(Opinion filed: September 12, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FREEMAN, *Circuit Judge*.

A putative class of tractor-trailer drivers sued Ironbound Express, a transport company to whom they leased their vehicles and driving services. After the District Court certified the class and determined that the plaintiffs were entitled to an injunction, a Magistrate Judge (acting with the consent of the parties) entered a permanent injunction against Ironbound. Ironbound appeals from that order, which we will affirm.

I

Six tractor-trailer drivers who lease their vehicles and driving services to Ironbound pursuant to a form lease agreement sued Ironbound in 2011. Individually and as representatives of a putative class, they alleged a breach of contract and violations of federal truth-in-leasing regulations. *See* 49 C.F.R. § 376.1 *et seq*. They sought damages and declaratory and injunctive relief.

In 2018, the District Court certified a class ("the Drivers") under Federal Rule of Civil Procedure 23(b)(2) for declaratory and injunctive relief on the truth-in-leasing claims. In March 2021, the District Court resolved the parties' cross-motions for summary judgment, holding that portions of Ironbound's template lease agreement conflicted with federal regulations. It determined that the Drivers satisfied the four-factor test for a permanent injunction with respect to these violations, and it stated the following:

> The Court will enjoin Defendant from entering into leases with Plaintiffs containing or lacking language consistent with [three federal regulations]. Within 10 days of this Opinion, Plaintiffs shall submit proposed language for the injunction order to the Court.

App. 103. The District Court echoed this language in an accompanying order ("the March 2021 Order"), which stated:

> Plaintiffs' motion for summary judgment as to their claim for injunctive relief as to [three federal regulations] is **GRANTED**; and it is further **ORDERED** that the Court will enjoin Defendant from entering into leases with Plaintiffs containing or lacking language consistent with [those regulations]. Within ten (10) days of this Order, Plaintiffs shall submit proposed language for the injunction order to the Court consistent with the accompanying Opinion.

App. 105. The Drivers did not timely file proposed language within 10 days. Therefore, the District Court never issued the injunction order it contemplated in the March 2021 Order.

As the litigation continued, the parties engaged in mediation with a Magistrate Judge in November 2023. Although the parties characterize what happened next differently, the record suggests that they reached an agreement with respect to some but not all terms of a settlement agreement. They filed a joint status report in May 2024 stating they were unable to reach agreement on two issues, one of which was injunctive relief. The Drivers requested leave to submit proposed language for the injunction contemplated by the March 2021 Order, stating that they had not done so in a timely manner due to an oversight. For its part, Ironbound asserted that (1) the Drivers failed to establish excusable neglect regarding their failure to file a timely proposed order for an injunction, and (2) any entitlement to injunctive relief was extinguished by the parties' having allegedly reached a settlement agreement.

3

Shortly after filing the joint status report, the Drivers moved for a permanent injunction to effectuate the March 2021 Order. While that motion was pending, the parties executed a proposed settlement agreement regarding monetary damages and filed it for judicial approval. They also consented to the Magistrate Judge ruling on the motion for a permanent injunction and conducting all remaining settlement-approval proceedings.

In September 2024, the Magistrate Judge entered the permanent injunction. Although he questioned the need to do so, the Magistrate Judge issued an order formally effectuating the March 2021 Order. Ironbound timely appealed.

II[1]

Ironbound offers various arguments to challenge the permanent injunction. None is persuasive.

Ironbound contends that the parties agreed upon a settlement in 2023 and any subsequent impasse was merely over the written terms memorializing the settlement. In Ironbound's view, that alleged settlement extinguished the Drivers' ability to obtain injunctive relief. There are several problems with this theory. For one, the District Court granted summary judgment to the plaintiff class in 2021, ruling that a permanent injunction was warranted. Therefore, to the extent the parties subsequently reached a

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 636(c), the parties consented to the Magistrate Judge's jurisdiction over the motion for a permanent injunction. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). We review the issuance of a permanent injunction for abuse of discretion. *Benezet Consulting LLC v. Sec'y Commonwealth of Pa.*, 26 F.4th 580, 584 (3d Cir. 2022).

4

settlement, they did so with that issue already resolved. For another, the parties' May 2024 status report makes clear that they had not agreed upon the specific terms of the injunctive relief. Ironbound invokes the general proposition that an oral settlement agreement may be enforceable, but that reliance is misplaced because the parties did not reach an agreement on the relevant terms. Moreover, even if the parties had agreed to a settlement in 2023, that occurred after the District Court certified the Drivers as a class pursuing injunctive relief. So court approval was necessary before any settlement took effect as to the class's claims. *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval.").[2]

Next, Ironbound argues that the Magistrate Judge did not properly consider the factors articulated in *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), before extending the time in which the Drivers could propose language for an injunction. Although his *Pioneer* analysis was brief, the Magistrate Judge nonetheless considered all four factors before concluding that, on balance, an extension was warranted. Notably, the Magistrate Judge determined that the three-year delay could not have significantly prejudiced Ironbound because the District Court "had already made clear in 2021 that the relief at issue was being granted." App.

---

[2] Relatedly, Ironbound argues the Magistrate Judge should have denied the motion for an injunction as moot in light of the proposed settlement the parties submitted for court approval while the motion was pending. This argument fails for the same reasons discussed above the line.

210.  The Magistrate Judge appropriately considered this unusual procedural history, and he did not abuse his discretion in ruling on the timeliness issue.  *See Drippe v. Tobelinski*, 604 F.3d 778, 784–85 (3d Cir. 2010).

Finally, Ironbound argues that the September 2024 injunction does not comply with Federal Rule of Civil Procedure 65(d), which requires that any injunction "describe in reasonable detail . . . the act or acts restrained or required."  We take a context-based approach to objections under Rule 65(d), because "the degree of particularity required . . . will depend on the nature of the subject matter."  *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 379 (3d Cir. 2021) (alterations and quotation marks omitted).  The specificity requirement "prevent[s] uncertainty and confusion on the part of those faced with injunctive orders," particularly given the risk of a finding of contempt for non-compliance.  *Id.* (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476–77 (1974)).

Ironbound's trivial objections to the September 2024 injunction make clear there is no such risk of uncertainty or confusion here.  For example, Ironbound faults the September 2024 injunction for citing 49 C.F.R. § 3**67**.12, instead of 49 C.F.R. § 3**76**.12.  It is hard to imagine how a party to this case would be confused by that scrivener's error.  Indeed, Ironbound's ability to note and correct the error in its brief demonstrates its lack of confusion.  Ironbound also complains that the September 2024 injunction applies to "defendant Ironbound Express, Inc., including its parents, subsidiaries, affiliates, successors and assigns," App. 212, instead of just "the Defendant," App. 105, as stated in the March 2021 Opinion.  But the additional language merely clarifies what entities are encompassed by "the Defendant."  *See* Fed. R. Civ. P. 65(d)(2) (stating that injunctions

bind the parties, the parties' agents, and those "in active concert or participation with" the parties).

In sum, Ironbound identifies no reason to disturb the September 2024 permanent injunction.

*    *    *

For the foregoing reasons, we will affirm the Magistrate Judge's order.